DANISH, J.
It is' well settled that it is a principal cause of challenge to one called as a juror on a trial for felony, that he was of the grand jury who found the' indictment against the prisoner. 21 Vin. Abr. Trial, 253; Coke Tit. 156 b; Herndon v. Bradshaw, 4 Bibb’s R. 45; Barlow v. The State, 2 Black. R. 114; Hunter v. Matthews, 12 Leigh 228.
The juror Flanagan is in that predicament ; and it is urged on behalf of the prisoner, that sentence has been pronounced against him without his ever having *enjoyed the right to a trial by a jury free from exception ; whilst on behalf of the prosecution it is argued, that the prisoner has not only waived his right of challenge, but that his exception to the juror has also been in fact satisfactorily answered; and that he has no good reason for arraigning the justice of the sentence by which he stands condemned.
The 4th section of ch. 162 of the Code of 1849 provides that no exception shall be allowed against any juror after he is sworn upon the jury, on account of his estate, age or other legal disability, It was, however, conceded in the argument, that this section is designed for the regulation of exceptions founded on the disabilities created by our statutes only ; and has no reference to other causes of challenge which exist at common law, but as to which the statutes are'silent.
The latter, it is admitted, are still governed by the principles and rules of practice of the common law.
It is insisted, however, by the attorney general, that these principles and rules require all challenges for whatever cause, to be made before the jurors are sworn ; and that nothing occurred on the trial of this case of which the prisoner can now be heard to complain : and in support of his position, he has cited Hawkins’ Pleas of the Crown; Archbold’s Criminal Practice; the cases of State v. Quarrell, and State v. O’Driscoll, 2 Bay’s R. 151, 153; Barlow v. The State, 2 Black. R. 114; and also the cases of Jones, Heth, Curran, and others of a like character, decided by our General court.
Hawkins and Archbold, and other text writers on criminal law, do state it as a general rule, that no juror can be challenged, by either side, without consent, after he has-been sworn, unless it be for some cause which happened since he was sworn ; and I believe the practice which most usually prevails is to require the challenges to be made as the jurors come *to the book, to be sworn in chief. And such was the practice previous to the revision of the criminal laws in 1848.
It is true, that in the first of these cases (State v. Quarrell), a motion to set aside a verdict on the ground that one of the jurors was an alien, was denied; and that in the cases of State v, O’Driscoll and Barlow v. The State, like motions founded on the fact that some of the petit jurors were on the grand juries that found the bills, met with a similar fate. The same decision was made in the case of Gillespie and others v. The State, 8 Yerg. R. 507; and a like decision was also made in a case of an analogous character by the Supreme court of Connecticut. Quinebaug Bank v. Leavens, 2 Conn. R. 87.
In the two first cited cases it does not appear that there was any affidavit even by the prisoners to show that they were ignorant of the causes of challenge to the jurors, at the time they were sworn ; and in the absence of such evidence, the court, I think, very properly held that the prisoners had waived their privilege.
In the case of Gillespie & others v. The State, there was an affidavit of the prisoner of his want of knowledge ; but I infer, from some remarks of the judge who delivered the opinion of the court, that it was not supported by other evidence, and that little or no credit was given to it. And in the case of Barlow v. The State, the evidence, instead of showing that the prisoner was ignorant of the fact that two of the jurors had been on the grand jury who found the bill, proved that he had previously known it. The court said, “The defendant does not deny the previous knowledge, but states in his affidavit that he did not recollect the circumstance when the petit jury was impaneled, nor did it occur to him until after the verdict had been returned. The counsel of the defendant *knew nothing of the fact until after the verdict had been given.” — “ The defendant had once known that these men were on the grand jury. The statement of his not recollecting it is insufficient: An affidavit to that effect could never be disproved. This part of the case then presents the question whether the objection, known to the defendant at the time of impaneling the jury, but not made till after the verdict, was good on a motion for a new trial. We think it was not. It was a good cause of challenge ; but being known to the party and not mentioned at the proper time, thé right was waived.”
This case is, I think, no authority for the proposition that a motion for a new trial may be refused when founded on proof that there *767 was good cause of challenge to a juror which was unknown to the prisoner before the trial. On the contrary, the inference to be drawn from the opinion is strong, that if the court had been satisfied that the prisoner did not know of the fact that two of the jury had been of the grand jury who found the bill, until after the verdict, they would have set it aside.
And in the case of the Quinebaug Bank v. Heavens, in which the motion was founded on the fact that the father of a stockholder in the bank was one of the jurors, the report of the case does not show that there was any proof or affidavit as to the want of knowledge of the defendant. The court recognized the propriety of the general rule forbidding a new trial for extrinsic causes, if the ground of the petition existed at the time of the trial, and was either then known to the petitioner or might have been known by him by using due diligence. They said that the cause of objection to the juror furnished legal ground of principal challenge, if it had been made in due time ; but it was of such a nature that parties might well waive it.
“But it does not appear by any averment in this motion, that *the defendant used any diligence, or made even the ordinary enquiries of the jurors themselves or otherwise, as to their qualifications ; although from the fact that a banking corporation was the plaintiff, consisting of numerous stockholders, they might well suspect either that some stockholder, or one or more of their many relatives, might be found upon the jury.” And after commenting further on the negligence of the defendant, the court come to the conclusion that it would under the circumstances be wrong to permit the defendant to take the risk of a verdict as he had done, and then to look about for objections ; and that he ought to be held to have waived his objections. They say, however, “If an enquiry had been made of the jurors, and this relationship had not been disclosed, or other reasonable pains had been taken, our opinion would have been different.”
The concluding remarks are in accordance with the views of the court in the case of Vennum v. Harwood, 1 Gilm. R. 659. In that case the verdict was set aside on the ground that a juror had formed and expressed a decided opinion on the merits of the case adverse to the defendant, which fact was not known to the defendant or his counsel, and the juror having been asked before he was sworn, whether he had formed and expressed an opinion. The court, in concluding their opinion, observed, “The juror, when called, was asked if he had formed or expressed an opinion, and declared emphatically that he had not. The defendant had a right to conclude from this declaration, that the juror was free from bias, and would try the case impartially. He could not challenge him for cause, and there was no apparent reason for a peremptory challenge. It is insisted, however, that he should have examined the juror on his voir dire touching his qualification. This practice is allowable, but is seldom resorted to in civil cases. We are not prepared to say that a party is to *be charged with negligence who fails to pursue this course in order to ascertain the competency of a juror.”
In the case before us, the bill of exceptions states that the juror Flanagan was sworn and tried on his voir dire, and stated that he had not made up or expressed any opinion as to the guilt or innocence of the prisoner, and proved himself free from exceptions; and was thereupon placed upon the panel of twenty-four. It is to be observed also, that the practice here in reference to inserting the names of the grand jurors in the caption of the indictment, is different from that which formerly prevailed, and probably still prevails, in England. There it has been usual to insert the names of twelve of the grand jurors at the least in the caption: And at one time it was held to be essential, as otherwise it might be that the presentment was by a less number than twelve ; in which case it would not be good. In later cases, however, it has been decided that the insertion of their names is not necessary. Wharton’s Am. Cr. Raw 102, 103. According to our practice, and as is the case with the indictment before us, the names of none-of the grand jurors are mentioned in the indictment: And there is, therefore, nothing apparent on the indictment to show who the jurors are, except the foreman, who writes on the back of it a true bill, and! subscribes his name. There was, therefore, nothing to point to any cause of exception to-the juror; nothing to awaken the' suspicion of the prisoner that there was any ground of challenge against him. On the contrary, he-had resorted to the precaution of examining the juror on his voir dire, and the examination had resulted in showing that he was. free from exception. If he had failed to use this precaution, and had consented to the juror’s being placed on the panel of twenty-four without instituting any enquiry into-his qualifications, there might be some ground for imputing to him a want of ^diligence. But in the case as it stands,, what ground is there for saying that the prisoner was not acting in good faith ?’ Where are the evidences of that gross neglect on which the law is to build the presumption of a waiver of his rights? There-is an entire absence of any proof to lead us to believe or even suspect that the pris-' oner in fact knew of the exception to the-juror before he was sworn ; and the prompt manner in which he brought it to the notice of the court after he was informed’ of it by the jailor, is not only a strong circumstance in aid of the statement in his. affidavit that he did not know it when the jury was sworn and impaneled, but serves, together with the other evidence apparent on the face of the transaction, to dispel any belief or suspicion that the object of the motion was to create difficulties or throw obstacles in the way of the proceedings.
If, therefore, the first cases cited by the-attorney general, stood alone and unexplained, I should still feel great hesitation in-, recognizing them as authority for a ruling; *768 adverse to the prisoner in a state of facts such as we have here. But such is not the case. On the contrary, precedents are not wanting of new trials granted for like exceptions under circumstances certainly not more favorable to the petitioner than those disclosed here- Thus, in the case of Herndon v. Bradshaw, 4 Bibb’s R. 45, a new trial was granted on the ground that one of the jury who rendered the verdict had served on a former trial of the cause. The grounds of their judgment are thus briefly stated by the court : “There is no doubt but what the juror was incompetent, and might have been challenged before he was sworn; and as that cause was not known to the attorney of Herndon until after the finding of the verdict, (Herndon himself not being present,) it furnished a good cause for a new trial. The court, ^'therefore, upon the affidavit of the attorney proving the discovery, should have awarded a new trial.”
So in the case of Page v. The Contoocook Valley Railroad, 1 Roster’s R. 438, a new trial was granted on the ground that one of the jury was discovered after the verdict to be a stockholder in another railroad, which by a contract with the Valley railroad, was interested in the revenues of the latter. The court, after setting out the facts, conclude by saying, “As this objection was not known to the appellant until after the verdict was returned, it was not waived by proceeding to trial without challenge.”
The cases of Commonwealth v. Jones, 1 Leigh 598; Heath v. Same, 1 Rob. R. 735; Commonwealth v. Hailstock, 2 Gratt. 564, and Curran v. Same, 7 Gratt. 619, cited by the attorney general, decide nothing, I think, in conflict with the claims of the prisoner.
In all of these cases, the applications for new trials, were founded upon the alleged discovery, after verdict, of improper bias in the jurors, which the prisoners endeavored to show existed, but was unknown to them, before the trial. In all of them it is true the applications were unsuccessful. But in none of them do the General court concede the coexistence of the two elements of improper bias in the juror and blameless ignorance of it on the part of the prisoner.
The doctrine to be gathered from those decisions and others of the same class, preceding them, I think substantially is, that when the prisoner excepts to a juror for cause before he is sworn, it is a matter of right to be adjudged by the court; when he excepts after trial for cause existing before the jiiror was elected and sworn, it is a matter addressed to the discretion of the court; and that in the exercise of this discretion the court ought to consider the whole case, and be satisfied that justice has been done ; and that where therp is conflict of testimony as to the language *and conduct of the jurors, on which the exception to the jurors is founded, it properly belongs to the judge who presided ,at the trial to weigh and to decide upon the credibility of the opposing statements of the witnesses and jurors, and to decide, upon all the circumstances of the case, whether there is such proof of perjury and corruption on the part of the jurors as to make it proper to grant a new trial.
But there is certainly nothing in these decisions, nor as I understand their opinions, in the reasoning of the judges, going to the extent of holding that a new trial ought to be refused when the court is fully satisfied that the juror is incompetent from having prejudged the case, that the cause of challenge was unknown to the prisoner, and that he was guilty of no laches in failing to discover it and make it known before the trial, merely because the judge who sat at the trial was satisfied that the verdict was in conformity with the evidence. So to decide would be to attach to a faultless ignorance of the facts on which his right depended, all the consequences of a conscious and deliberate waiver by the prisoner of such right, and to allow to the finding of incompetent, prejudiced, and even corrupt jurors, all the virtue and efficacy which belong to the verdict of men, true, lawful and above all exception. Such a doctrine would, it seems to me, be at war with the merciful spirit which' governs the administration of criminal law, and is in direct conflict with the whole current of decisions in this country. McKinley v. Smith, Hardin’s R. 167; Jeffries v. Randall, 14 Mass. R. 205; United States v. Fries, 3 Dall. R. 515; State v. Hopkins, 1 Bay’s S. Car. R. 373; Hardy v. Sprowle, 32 Maine R. 310; Briggs v. Georgia, 15 Verm. R. 61; Commonwealth v. Flannagan, 7 Watts & Serg. 68; Sellers v. The People, 3 Scamm. R. 412; Cody v. State, 3 How. R. 27; Lisle v. The State, 6 Missouri R. 426; Tenney v. Evans, 13 *New Hamp. R. 462; Troxdale v. The State, 9 Humph. R. 411; Monroe v. The State, 5 Georgia R. 142.
In the case last cited, the decisions are very fully reviewed, and the doctrine thoroughly and ably discussed; and the result announced is, that where the objection to the juror would be good cause of challange for favor if discovered in time, it will be ground for a new trial if not found out till after verdict. It is obvious, however, that the application of the prisoner is presented under circumstances far more favorable to him than it would have been if his exceptions to the juror had been taken for the first time, after the verdict. Any degree of negligence may, with very slight aid from other circumstances, be sufficient to ripen and confirm into a judicial belief, that suspicion of unfairness which naturally and justly attaches itself to the conduct of one who, having taken the chances of a trial, seeks to rid himself of an adverse verdict, on the score of objections to his triers existing before they were chosen and sworn. It is difficult, however, to find any foundation in justice for a rule which would impart to the mere swearing of the jury the effect of destroying all those presumptions of innocence which, hitherto, the law allowed to the situation of the prisoner; which, thenceforth, before any evidence, of guilt is exhibited, before a witness in the cause is examined, would subject his statements, motives and conduct to all the distrust incident to the posi- *769 tiosi oí one against whom a verdict of guilty has been rendered ; and which would treat his exceptions to jurors, founded on allegations of recently discovered incompetency, as the suggestions of conscious guilt, bad faith and corrupt scheming.
We shall, I think, find accordingly, that the principles to be deduced from the modern de-cisons justify an indulgence to motions to set aside jurors after they are sworn andbe-fore they have rendered a verdict, *'which would not be allowed to applications for new trials founded on exceptions to jurors, taken after verdict.
With the exception of some early cases, which will be noticed presently, I have been al de to find but two cases in England i n which questions of the like character with the one under consideration have arisen. The Queen v. Wardle, 41 Eng. C. L. R. 351, and The Same v. Sullivan and others, 35 Eng. C. L. R. 539. In the former, which was a trial for felony, after the jury were sworn without any challenge or objection of any kind, and after •one witness had been examined, the foreman of the jury brought to the notice of the court the fact that the prisoner had a relation on the jury ; whereupon, it was moved by the prosecution that the jury should be discharged without giving any verdict, and a new jury called and sworn. Mr. Justice Erskine, before whom the trial was conducted, having conferred with Tin dal, Ch. J., briefly said — “I have conferred with the lord chief justice, and we are of opinion that I have no power to discharge the jury, and that the case must proceed.”
In the latter case, which was an indictment for conspiracy, tried before Eord Denman, Ch. J., after the jury were sworn and the case partly opened, the foreman of the jury stated that he had been on the grand jury which found the bill; and thereupon the counsel for the prosecution offered to consent to withdraw the juror and let the trial proceed with eleven ; but the defendants not consenting, the case went on before the jury as at first composed, and the defendants were convicted: And they then moved for a new trial. In the course of the argument, the chief justice said that he was not disposed to say “whether the challenge if taken would have been available or not: but at any rate, the objection should have been stated at the proper time. If it had been mentioned ^before the trial, all of us probably would have agreed to exclude the juryman.” After a consultation, he delivered a brief opinion, in which he observed, “We think that the objection should have been taken by way of challenge. The defendants here did not challenge ; and when the objection was pointed out, and it was proposed that the juror should withdraw, they declined assenting to that course, and preferred to stand upon the strict law And the rule to set aside the verdict on the ground of a mistrial was denied. As the comments upon the earlier cases, before alluded to, contained in an opinion to be cited hereafter, apply also in some respects to these two cases, it is more convenient to defer any remark upon them till that opinion is cited.
In this country we have also but few opinions on this subject.
In Ward v. The State, 1 Humph. R. 253, decided by the Supreme court of Tennessee, after the jury were sworn and impaneled, but before any witnesses were examined, it was discovered that several of the jury were not freeholders ; and on the motion of the attorney general, he was permitted to challenge the jurors on account of their disability. They were set aside against the consent of the prisoner, and others were substituted in their place, and the prisoner convicted : And it was held that the prisoner was thereby discharged. The court said that after the jury were sworn, it was too late to challenge any of its members propter defectum ; that a jury could not be discharged after they were sworn and charged; that the word “charged” did uot mean after the jury were sworn and had heard the testimony, or a part of it, but after the prisoner had been placed in the hands of the jury for trial; and that the discharge of the jury after they were sworn and so charged, against the consent of the prisoner, operated his discharge.
*In the case of The People v. Damon, 13 Wend. R. 351, on a trial for murder, after the fourth juror had been sworn in chief and taken his seat, the district attorney enquired of him whether he had conscientious scruples against finding a verdict of guilty for an offence punishable with death. The counsel for the prisoner objected, that the enquiry was too late ; that after the juror was sworn in chief, he could not be objected to. The court overruled the objection, and on the juror’s stating that he belonged to a religious denomination who had scruples of conscience against finding a verdict of guilty in a case punishable with death, and that he had such scruples, he was set aside by the court.
In the course of a very able opinion delivered by Chief Justice Savage, in which the whole court concurred, he observed, “The regular practice is, to challenge jurors as they come to the book to be sworn and before they are sworn; but I apprehend this is a matter of practice, and may be departed from in the discretion of the court. The object is to give the prisoner a fair trial ; and if it be made to appear, even after a juror is sworn, that he is wholly incompetent by reason of having prejudged the case, it is not then too late to set him aside and call another. It is indeed laid down in the old books that it cannot be done. Hawkins says a juror cannot be challenged after he has been sworn, unless for some cause which happened after he was sworn, (according to the greater number of authorities,) and cites the year books.” 4 Hawkins 387, ch. 43. In Tyndal’s Case, Cro. Car. 291, the prisoner challenged the foreman of the jury, but he was sworn by the clerk before the challenge was heard by the courtand therefore, without the assent of the attorney general, then present, they would not alter the record ; and because the attorney general would not consent to alter the record, the challenge *was disallowed. In Whar *770 ton’s Case, Yelv. R. 24, upon the arraignment of the prisoner for murder, on the first day eleven jurors appeared and were sworn ; one was challenged, and for that time the trial was stayed. Upon a tales taken at another day, when the jury appeared, one of the jurors who had been sworn was challenged for cause which existed before he was sworn. . Upon a doubt arising among the judges of the King’s bench, Yelverton went into the Common pleas to know their opinion. The opinion was that the queen could not have the challenge after the juror had been sworn. Another matter of doubt was whether those already sworn should not be sworn over again ; and the court held that they must be sworn again. The jury acquitted the prisoner. “Wherefore, (says the reporter) Popham, Gawly and Fenner fuerunt valde irati ; and all the jurors were committed and fined and bound to their good behavior.” In the first of these cases, the reason given for the decision of the court is not one calculated to give us very elevated notions of the criminal justice in the reign of Charles I. Because the attorney general would not consent to alter the record, by striking out the name of one juror and inserting another, therefore an incompetent juror must serve. In the second, an incompetent juror was permitted to sit, because the attorney general was not aware, until sworn, of his relation to one of the prisoners; and this, although they admitted that the oath administered was of no effect, by directing him to be sworn a second time. The verdict was such as should have been expected, and, it would seem, ought not to have called down on the whole jury the signal vengeance of the' court. It must have been a clear case of guilt; and because the court would not exercise a proper discretion in setting aside an incompetent juror, before the jury was completed or the trial was corn-menced, they found themselves ’^called upon to punish the whole jury, who probably were led astray by the improper person who was permitted to be one of their number. Hawkins intimates there are authorities the other way ; but I apprehend no authority can be necessary to sustain the proposition, “that the court may and should in its discretion set aside all persons who are incompetent jurors at any time before evidence is given.”
On the trial of the celebrated Titus Oates, a state of things occurred during the swearing and impaneling of the jury, very similar to that which existed in Tyndal’s case. A’fter some of the jury were sworn, the prisoner challenged one of them because he had been on the grand jury, and stated that he intended to have challenged him before he was sworn, but that the clerk had proceeded with such haste as to prevent his doing so. The court replied that he was too late, as the juror was sworn ; but the attorney general seeing the palpable unfairness of the proceeding, waived the difficulty, and permitted the juror to be set aside. 10 St. Trials 108.
The objections to the ruling in the cases of Tyndal and Wharton, presented in the opinion of the Supreme court of New York just cited, seem to me to be very just and proper ; and I can see no good reason for denying, in this state, the right and duty of the court to set aside jurors on the score of exceptions propter affectum, taken either by the prosecution or the prisoner at any time before the examination of the witnesses has commenced. For in Martin’s Case, 2 Leigh 745, the General court held, (citing Coke, Foster and Blackstone,) that the separation or discharge of a jury after the swearing and impaneling but before the examining of witnesses, is no ground of objection to a verdict; thus,' denying the authority of Ward v. The State. The same doctrine was reasserted by the court in Tooel’s Case, 11 Leigh 714:
And such I Understand is still the rule in England. Roscoe’s Cr. Evi. 222.
In this state of the law, the denial by the court in the case of The Queen v. Wardle, of its power to set aside the juror, it will be perceived can have no application in this case, inasmuch as in this case the motion was made by the prisoner and before any witness had been called, aud in that it was made by the prosecutor and after a part of the evidence had been given in. And I think it obvious from the remarks which fell from Chief Justice Denman, during the argument of the motion in the case of The Queen v. Sullivan, as well as from the grounds set forth in the opinion of the court, in rendering judgment on the motion, that if the prisoners there, instead of objecting to, had concurred in, the motion of the attorney general to set the juror aside, or had themselves asked that the juror should be set aside on his disclosing the fact that he was of the grand jury that found the bill, the court would have found no difficulty in setting aside the juror. In that case it will be recollected no witnesses had been examined.
So that, it seems to me, a review of the English precedents furnishes no ground for supposing that, in the existing state of the law in England, with respect to the discharge of juries, English judges would now deny their power to set aside a juror at the instance of a prisoner, at any time before the examination of the witnesses had commenced.
And indeed I can see no reasons, other than those suggested by convenience, which would deny to the court the right to set aside a juror, on the motion or by the consent of the prisoner, at any time before the verdict is rendered. It is true that at one time it was held, on the authority of a decision reported in a note to the case of Chedwick v. Hughes, Carth. R. 465, that in criminal cases a juror cannot be withdrawn but by *consent; and in capital cases, not even with consent. This doctrine, if it ever had any general prevalence, has been long since exploded ; and I presume there can be no doubt now, that a motion of a prisoner to set aside a verdict or to be discharged, on the ground of a discharge of the jury, brought about by his motion or with his consent, would be promptly denied. Waterman’s Archbold 172, and notes.
And in Illinois, where they have a statute *771 giving- to the court the power, when a juror, after being sworn, is for any reasonable cause dismissed or discharged, to cause another to be sworn in his stead, the practice prevails of setting aside jurors on the motion of the commonwealth and against the consent of the prisoner, even after witnesses have been examined. Stone v. The People, 2 Scamm. R. 326. In that case, it was discovered, after the jury had been sworn and impaneled and a part of the witnesses examined, that one of the jury was an alien. And he was, on the motion of the prosecutor and against the consent of the prisoner, discharged, and a new juror was sworn in his place; and it was held that there was no cause for setting aside the verdict. And in the case of Thomas v. Leonard, 4 Scamm. R. 556, the same rule is applied to civil cases, and the broad doctrine announced, that in all cases a court has a discretion, whenever it comes to its knowledge that a juror has been inadvertently sworn who cannot render a legal verdict, to discharge him.
We have a statute somewhat similar in its provisions to the Illinois statute. The 12th section of chapter 208 of the Code provides that if a juror, after he is sworn, be unable from any cause to perform his duty, the court may, in its discretion, cause another qualified juror to be sworn in his place. And in any criminal case the court may discharge the jury when it appears they cannot agree in a verdict, or that there is a manifest ‘^necessity for such discharge. Whether the incompetency of a juror, from having prejudged the case, discovered before verdict, would be regarded by our courts as an inability to perform his duty, and as presenting a necessity for his discharge, in the contemplation of the statute, it is not necessary to consider. Whatever may be the proper interpretation of the statute in this regard, it is obvious that it does not expressly or by implication narrow the powers of the court, or in any wise abridge any discretion before existing, to set aside jurors. Nor do I think that the power of the court in this regard is affected by the provision of the 10th section of chapter 108 of the Code, requiring the twelve selected by lot to constitute the jury.
Without entering, therefore, into a consideration of the circumstances under which the discharge of a jury at the instance of the prosecution and without the consent of the prisoner would or would not result in a discharge of the prisoner, I have come to the conclusion that with us the courts have the right, in their discretion, to set aside jurors, on the score of incompetency, propter affec-tum, discovered after they are sworn, on the motion or with the consent of the prisoner, at any time before verdict rendered ; and at the instance of the commonwealth, for like cause at any time, when the discharge of the jury without the consent of the prisoner would not result in a discharge of the latter.
It remains to be considered whether the court ought, in the exercise of its discretion, to have set aside the juror Flanagan under the circumstances disclosed in the prisoher’s first bill of exceptions.
I have already expressed the opinion- that there was nothing in the conduct of the prisoner from which to infer a waiver of his rights ; nothing in his own statements, or in those of his witness, to justify doubt as *to their truth. He acted promptly on the information communicated to -him by Dawson, and pursued exactly that course which is recommended to persons in his . situation, by the court in the case of McCorkle v. Binns, 5 Binn. R. 340. That was an application for a new trial, founded on the discovery of objection to a juror after the trial had commenced, but before the verdict. The court said that the defendant, in order to entitle himself to the benefit of the objection, should have disclosed the information promptly to the court. He ought not to have taken the chance of a verdict in his favor, and kept his motion for a new trial in reserve, because the plaintiff and defendant were then placed on an unequal footing. “I mention this (said the judge) for the direction of those who may happen to be in like circumstances in future.” The inference is irresistible, that had the defendant acted there as the prisoner has here, he would have obtained relief.
The only circumstance calculated to excite suspicion that the prisoner contemplated some object other than that which was the ostensible one of his motion, is to be found in the answer given by his counsel to the enquiry of the court, how the place of Flanagan should be supplied, or if he was. discharged from the jury, what should or could be done ; the answer which was given being that the commonwealth had had agrand jury, and now a petit jury, and must remove the difficulty. It certainly would have been more courteous to the judge ; it wouldhave stripped the application of the slightest appearance of any wish on the part of the prisoner or his counsel to embarrass the proceedings, if the counsel, instead of replying as he did, had proceeded to point out the mode by which the difficulty suggested by the question of the court might be obviated. But it is difficult to conceive on what principle the prisoner’s rights could be compromited by such a conversation. Having brought to the notice of *1he court the facts upon, which he supposed his rights to depend, and having founded a motion on those facts, I cannot see that it was the duty of the prisoner or his counsel to do any thing more, or how we should be justified in imputing to a failure to do more the motive to gain some ulterior and un fair advantage. The answer, fairly interpreted, is, “I have submitted my rights to the court; it is for the court and not for me to pronounce the judgment of the law upon them, and to consider what may be the legal consequences flowing from such judgment.” But even if we infer, from the course of the prisoner’s counsel, that he entertained some hope or expectation that the granting of his own motion by the court might result in something to his advantage besides simply procuring the substitution of *772 another juror in the place of Flanagan, still his declining to point out a mode of obviating any supposed difficulty could not have the effect of withdrawing or altering the nature ■of his motion, which was plain and unambiguous. If his motion had been simply to set aside the juror, the question might have, arisen whether granting it as asked might not result in the necessity of going anew through the process of forming an entire jury’; and in such case, and in order to obviate the inconvenience and delay consequent on granting the motion, it might have been proper in the court, as eleven of the jury remained free from exception, to have placed the prisoner on the terms of consenting that another qualified juror should be sworn, and that he with the eleven others should proceed to try the case. But the motion, as has been seen, was not simply to set aside Flanagan, but also to do exactly what we have just supposed the court might have required the prisoner to consent to, to wit, to substitute another juror in the place of the one to be set aside. Such being the motion, the case of Tooel, already cited, furnished a precedent *for the course to be pursued by the court. The swearing of another qualified juror in the place of Flanagan could not have been made a- ground either for a discharge of the prisoner or a new trial.
There remains yet another enquiry, and that is, whether the objection to the juror was removed by his statements made on his second examination on the voir dire.
I think it questionable at the least, whether the juror ought to have been subjected to such a test. Where the objection to the juror is founded on the proofs of favor deduced from statements alleged to have been made by him, his denial or explanation of such statements may and often does serve to satisfy the mind ! of the court of his indifferency. But when, as here, the law attaches a presumption of i bias or favor to the fact of the juror’s having been on a former jury, it is difficult-to conceive of any statement by which that presumption can be wholly removed. For if the juror on his examination should state the only fact that could well wholly disprove the formation of opinions or impressions unfavorable to the prisoner, from the evidence given before the.grand jury, to wit, that the indictment was found and returned by twelve of the .grand jury, against his opinion and consent, he would at once show himself liable to exception on the part of the prosecution, having already adjudged the prisoner not guilty on the ex parte showing of the prosecution, and without any aid from the prisoner’s testimony. And even upon the concession that it was allowable to examine the juror on trying the exception to him, I should doubt whether his statements, of having paid little attention to the testimony, and of being governed by what the jurors said-as well as what was testified to by the witnesses, accompanied by the disclaimer of having formed or expressed any opinion as to the guilt or innocence of the accused, *were such as ought in any case to be received as a sufficient answer to the presumption which the law- attaches to his position. For of so serious a character is the exception to a petit juror, on the ground of his having been one of the grand jury who found the bill, that according to Ford Hale, it is an offense punishable by fine for a man who was one of the indictors, and who was returned as one of the petit jury, not to challenge himself. 2 Hale Pl. C. 309. And when I look to the whole conduct of the juror, it seems to me that there are peculiar circumstances in his case rendering him not only liable to the challenge of the prisoner, but also exposes him to the just censure of the court.
On his second examination he discloses the fact that before he was summoned as a petit juror he had in a conversation with Dawson told him that the sheriff had informed him (the juror) that he anticipated difficulty in getting a jury, who had not made up or expressed an opinion ; and that he had also said to Dawson that he did not expect to be summoned, as he was on the grand jury. It appears that he served on the grand jury on the 19th of September; and yet on the 26th of the same month, only one week thereafter, when called as a petit juror in the case, notwithstanding his recent conversation with Dawson and the brief interval which had elapsed since he acted as a grand juror-in the case, he failed upon his voir dire to disclose the fact that he had been on the grand jury, and proved himself freefrom exception. And upon his second examination he still failed to assign any reason or give any explanation why he had not made known the fact of his being one of the grand jurors; but opposes to the inference of his having prejudged the case which the law deduces from the capacity in which he had acted, a denial of having formed any opinion, and places his freedom from such opinion to the account *of his having discharged his duties as a grand juror in a loose, imperfect and careless manner. I cannot, in this state of things, say that the legal presumptions against his fitness and competency have been removed. Whatever may have been his motive, I cannot say that he appears free from all exception. I hold with the learned judge who delivered the opinion of the court in Clarke v. Goode, 6 J. J. Marsh. R. 37, that “It is not only important that justice should be impartially administered, but where it can be effected without the violation of any rule of propriety, that it should flow through channels as clear from suspicion as possible ” I cannot recognize the justice or propriety of a rule which would force a prisoner against his consent to enter upon the hazard of a trial by a juror, standing in the predicament in which the juror Flanagan is presented by the record of this case. And I think the prisoner is entitled to a new trial.
ARURN, P., and SAMURDS, J., concurred in the opinion of Daniel, J.
MONCURR and DRR, Js., dissented.
Judgment reversed, and new trial awarded.