## SWOFFORD BROS. DRY GOODS CO. v. OWEN et al.

### No. 2816.    Opinion Filed June 11, 1913.

### (133 Pac. 193.)

1. **CORPORATIONS—Organization—"De Facto Corporation."** Under Act ·Cong. Feb. 18, 1901, c. 379, 31 ·St. at L. 794, putting· in force in the Indian Territory certain provisions of the laws of Arkansas, relating to corporations (section 960, and succeeding sections down to and including section 1035, Mansf. Dig.), where the president and directors of a corporation in course of organization filed a true copy of their articles of incorporation, at full length, and also a certificate setting forth the purpose for whicn such corporation is formed, the amount of its capital stock, the amount actually paid in, and the names of its stockholders, and the number of shares by each respectively owned, with the clerk of the United States Court of Appeals for the Indian Territory, but fail to file a duplicate thereof with the clerk of the judicial district in which such organization is to transact business, where the attempt to organize is for a lawful purpose and within the statute, made in good faith, and there has been an actual user of the corporate franchise for a term of years, without objection on the part of the sovereignty, a de facto corporation is thereby created.

2. **SAME—Legality of Incorporation—Right to Attack.** The legal existence of such a corporation cannot be inquired into by those with whom as a corporation it has contracted, though the legality of its corporate existence may be inquired into by the state in an action brought by it in the manner prescribed by statute.

3. **PARTNERSHIP—Legality of Incorporation—Stockholders.** A creditor who has dealt with a corporation de facto in its corporate name and capacity, and given credit to it and not to its stockholders, cannot, in the absence of fraud, charge them as partners with the debts of the corporation.

4. **BANKRUPTCY—Effect of Filing Claim—Partnership—Estoppel.** By filing proof of its claim against a bankrupt corporation, and receiving and accepting dividends on account thereof, a creditor is estopped from asserting its claim, in an action subsequently brought on the same indebtedness, against certain of the stockholders, with whom it claims it contracted as a partnership.

5. **SAME—Allowance of Claim—Adjudication of Liability of Corporation.** The presentation and allowance of the account as a debt of the corporation was an adjudication by a court of competent jurisdiction, done at the instance and procurement of the creditor, fixing the corporation's liability.

6. **SAME—Effect of Filing Claim—Estoppel.** Even though the creditor, before filing its claim, was entitled to proceed against certain of the stockholders as partners, it having elected to file its claim against the bankrupt corporation, and participated in the corporate dividends declared, with knowledge of the facts, cannot subsequently be heard to say that the indebtedness was not in fact a debt of the corporation, but of the partners instead.

7. **CORPORATIONS—Liability of Directors—Accrual.** Under section 1297, Comp. Laws 1909, no right of action accrues to the creditor of a corporation against the directors for creating debts beyond the subscribed capital stock until after a dissolution of the corporation shall have been duly adjudged.

(Syllabus by Sharp, C.)

*Error from Carter County Court;*
*M. F. Winfrey, Judge.*

Action by the Swofford Bros. Dry Goods Company against R. A. Owen and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*J. F. Bledsoe* and *Thos. Norman,* for plaintiff in error.
*D. A. Richardson* and *W. F. Tyree,* for defendants in error.

Opinion by SHARP, C. On the 22d day of April, 1903, articles of agreement and incorporation were filed by the Owen-Willis-Wheeler Mercantile Company in the office of the clerk of the United States Court of Appeals for the Indian Territory, at McAlester. The corporation so organized thereafter engaged in the general mercantile business in the Indian Territory, and afterwards in Oklahoma, until July 2, 1908, when it was adjudged a bankrupt by the United States District Court for the Eastern District of Oklahoma. The corporation was organized pursuant to an Act of Congress of February 18, 1901, putting in force in the Indian Territory certain provisions of the laws of Arkansas relating to corporations. Among the statutes so put in force was section 960, and the succeeding sections down to and including section 1035, as published in 1884, in the volume known as Mansfield's Digest. Section 968 of the adopted statutes provides that, before any corporation formed and established by virtue of the provisions

of said act shall commence business, the president and direc-
tors thereof shall file a true copy of their articles of associa-
tion at full length, and also a certificate setting forth the pur-
pose for which such corporation is formed, the amount of its
capital stock, the amount actually paid in, and the names of
its stockholders, and the numbers of shares by each respectively
owned, with the Secretary of State, and a duplicate thereof
with the clerk of the county in which said corporation is to
transact business. Under section 2 of the act of Congress, it
was provided that wherever the words "Secretary of State" oc-
cur there should be substituted therefor the words "clerk
of the United States Court of Appeals for the Indian Ter-
ritory," and wherever the words "clerk of the county" occur
there should be substituted therefor "clerk of the judicial
district." So that, to comply fully with the law thus put in
force, it was necessary to file a true copy of the articles of as-
sociation with the clerk of the United States Court of Appeals
for the Indian Territory, and a duplicate thereof with the
clerk of the judicial district in which such corporation was to
transact business. The former, as we have seen, was done;
it does not appear from the record that the latter was. Save
in this respect, the organization of the corporation appears in
every way to have been regular, and that the corporation so
formed continued the exercise of its corporate powers until
adjudicated a bankrupt. June 11, 1909, plaintiff sued the
defendants, R. A. Owen, A. G. Noble, J. Hamp Willis, and John
McDuffee, former stockholders of said corporation, to recover
an alleged balance due it amounting to $996.24. The petition
charged that the defendants on or about the 18th day of De-
cember, 1907, and subsequently thereto, were engaged in the
mercantile business at Woodville and Kingston, Okla., under
the firm name and style of the Owen-Willis-Wheeler Mercan-
tile Company, and that said concern was indebted to plaintiff
on account for goods, wares, and merchandise purchased be-
tween December 18, 1907, and March 25, 1908, on which there
was a balance due, after allowing all proper credits, of $883.05.

A second count in the petition sought to recover the additional sum of $116.19 and attorney's fee, being the balance due on a promissory note, dated March 31, 1908. The answer of the defendants Willis, Owen, and McDuffee contained (1) a general denial; and further charged (2) that the indebtedness sued on was that of the corporation; (3) estoppel by a course of dealing; (4) estoppel arising out of the fact that plaintiff had asserted its claim against the bankrupt corporation, had participated in said bankruptcy proceedings, and received therefrom and accepted dividends on account of its said indebtedness. After a paragraph containing a general denial, plaintiff in its amended reply, filed February 17, 1911, charged as follows:

"Further replying to said answers, plaintiff denies that the Owen-Willis-Wheeler Mercantile Company is a corporation, and denies that it is still in existence, but admits that it was adjudged a bankrupt as alleged in said answer."

Plaintiff's testimony consisted of the deposition of its former adjuster, who testified that the plaintiff had been selling goods to the Owen-Willis-Wheeler Mercantile Company of Kingston and Woodville for several years, and up to and including the transactions of 1908 the plaintiff company dealt with said Owen-Willis-Wheeler Mercantile Company as a corporation. The witness further testified that the bill of goods included in the first paragraph of the petition was sold, not to the corporation, but to a corpartnership composed of Owen, Willis and McDuffee, upon the representation of these parties and one Murphy that the corporation had been dissolved, and a copartnership organized in its stead. At the close of the trial, the court peremptorily instructed the jury to return a verdict for the defendants. This is urged as error for the following reasons: (1) That it does not appear that the Owen-Willis-Wheeler Mercantile Company was duly incorporated, and, if not, the defendants, being stockholders, were liable as partners; (2) that the defendants, having represented that the goods were purchased for the copartnership, were therefore individually liable, regardless of the fact that the corporation was or

was not regularly incorporated. A payment of $242.47 was collected and remitted by their attorneys, in addition to which $92.97 was paid it by the trustee, J. P. Haven. These payments, so made and credited, consisted of dividends realized out of the bankrupt corporation. The plaintiff had full knowledge of the bankruptcy proceedings, and at one time made an offer to purchase the bankrupt stock.

Assuming, without deciding, that it was incumbent upon the defendants to prove, under the issues joined, a duplicate of the articles of incorporation was filed with the clerk of the judicial district in which the corporation was to transact its business, what, then, would be the legal effect of a failure to comply with this provision of the statute? The adopted statute authorized the organization of a corporation for the purpose of engaging in or carrying on any kind of manufacturing, mechanical, mining, or other lawful business. There was a *bona fide* attempt to organize a corporation for the purpose of engaging in the general mercantile business, a class of business within the statute. As we have seen, articles of incorporation had been filed with the clerk of the Court of Appeals; of the capital stock, $20,000 had been subscribed and paid in, and stock certificates issued therefor; also that directors and officers had been elected, and for a term of years had proceeded in the discharge of their respective duties. In fact, all of the steps necessary to the formation of a *de jure* corporation had been effected, except proof is lacking in the one particular above mentioned. There had been an actual user of the corporate franchise for the period of five years, and during all of which time the corporation had been actively engaged in performing its corporate functions. The honest belief and good faith of the incorporators that they had in fact effected a corporation stands unchallenged. The rule applicable to such cases is announced in *Tulare Irrigation District et al. v. Shepard*, 185 U. S. 1, 22 Sup. Ct. 531, 46 L. Ed. 773, after the citation of numerous cases, in the following language:

"From the authorities, some of which are above cited it appears that the requisites to constitute a corporation *de facto* are three: (1) A charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise."

In *Whipple v. Tuxworth*, 81 Ark. 391, 99 S. W. 86, the above case is cited with approval, and the rule there announced, pertaining to the liability of stockholders in a *de facto* corporation, is followed; numerous additional authorities being cited in support of the court's conclusions. Speaking with reference to the liability of stockholders in a *de facto* corporation, it is said in Cook on Corporations (4th Ed.) sec. 234:

"During the past few years, however, the great weight of authority has clearly established the rule that, where a supposed corporation is doing business as a *de facto* corporation, the stockholders cannot be held liable as partners, although there have been irregularities, omissions, or mistakes in incorporating or organizing the company. The corporation is a *de facto* corporation where there is a law authorizing such a corporation and where the company has made an effort to organize under that law and is transacting business in a corporate name. * * * It must be admitted that this conclusion of the law is reasonable and just. There is no reason why parties who have dealt with a corporation as a corporation should afterwards be allowed to claim more than they originally bargained for, and to hold the stockholders personally liable. Such a rule would be disastrous in the extreme. Under the rule subjecting stockholders to this unknown peril, the dangers to business were so great, the hardship to innocent parties so intolerable, and the risk of investing in corporate enterprises so increased, the courts gradually departed from the old decisions on this subject and wisely refused to hold the stockholders liable. The equities are against such liability, and recent cases have so settled the law beyond reasonable doubt."

See, also, section 637. Other authorities are *Newcomb-Endicott Co. v. Fee*, 167 Mich. 574, 133 N. W. 540; *Stevens v. Episcopal History Co.*, 140 App. Div. 570, 125 N. Y. Supp. 573, 579; *Card v. Moore*, 68 App. Div. 327, 74 N. Y. Supp. 18, affirmed in 173 N. Y. 598, 66 N. E. 1105; *Brookville &*

*G. Turnpike Co. v. McCarty,* 8 Ind. 392, 65 Am. Dec. 768. Both from principal and by the great weight of authority, but few of which we have attempted to cite, the corporation was a *de facto* organization. Had a duplicate of the articles of incorporation been filed with the clerk of the judicial district, it would have been a *de jure* corporation. The duplicate not being filed, the right of the *de facto* corporation to act within the scope of its corporate authority and to bind and be bound by its acts is none the less effective. There existed the three necessary elements to constitute a *de facto* corporation; *i. e.,* a general law authorizing the incorporation; a *bona fide* attempt to organize, and a user for a term of years of the corporate franchise.

Not only was the company a *de facto* organization, but it was so recognized by the plaintiff during a long course of dealing. A person who has entered into a contract with a *de facto* corporation in its proper name and capacity cannot, in the absence of an averment of fraud, afterwards disregard the existence of the corporation and sue the stockholders individually as partners. Corporations may exist either *de jure* or *de facto.* If of the latter class, they are under the protection of the same law, and governed by the same legal principles as those of the former, so long as the sovereignty acquiesces in their existence and exercise of corporate functions.

A private citizen, whose rights are not invaded and who has no cause of complaint, has no right to inquire collaterally into the legality of its existence. This can only be done in a direct proceeding on the part of the state, from whom it derived the right to exist as a corporation, and whose authority is usurped. It was said in *Western Union Telegraph Co. v. Mexican Agr. Land Co.,* 31 Okla. 528, 122 Pac. 505, in this regard:

"It is true that the legality of the organization of a corporation cannot be collaterally questioned, but must be tested by an information; and that where there has been a good-faith effort to organize a corporation under the law, and corporate functions have been assumed and exercised, the organization becomes a corporation *de facto,* and as a general rule its exis-

tence cannot be inquired into collaterally. But the distinction must be kept in view between an attempted incorporation under a statute authorizing the creation of such corporation and an attempted incorporation where no statute authorizes the creation of such a corporation. If there is a law authorizing incorporation, and a good-faith effort has been made to organize under such law, and the company has exercised corporate rights, it becomes a *de facto* corporation, and its *de jure* existence can only be questioned by the state."

In *Swartwout v. Railroad Co.,* 24 Mich. 390, the court, speaking through Cooley, J., on this subject, expressed itself in the following language:

"Where there is thus a corporation *de facto,* with no want of legislative power to its due and legal existence, when it is proceeding in the performance of corporate functions, and the public are dealing with it on the supposition that it is what it professes to be, and the questions suggested are only whether there has been exact regularity and strict compliance with the provisions of the law relating to incorporattion, it is plainly a dictate alike of justice and of public policy that in controversies between the *de facto* corporation and those who have entered into contract relations with it, as corporators or otherwise, such questions should not be suffered to be raised."

The Supreme Court of Alabama in *Cahill v. Association,* 61 Ala. 232, speaking through Brickell, C. J., on this subject, said:

"Whoever contracts with a corporation, in the use of corporate powers and franchises, and within the scope of such powers, is estopped from denying the existence of the corporation, or inquiring into the regularity of the corporate organization, when an enforcement of the contract, or of rights arising under it, is sought."

Taylor, in his work on Corporations, par. 148, having stated the general rule that a corporation when sued on its contract, and the person who contracted with it, when sued on his contract, is estopped to deny its legal corporation, adds:

"Furthermore, persons who have contracted with a corporation as such, and have acquired claims against it, are estopped from denying its corporate existence for the purpose of holding its shareholders liable as partners."

While there are authorities announcing a different rule, we believe as a matter of exact justice and correct principle that those dealing with a corporation which has failed in some particular to comply with the statute under which it is organized in the absence of fraud on the part of the *de facto* corporation, are by their conduct estopped from questioning the validity of the corporate organization. Having dealt with the corporation upon the strength of its financial worth and liability, it would be most inequitable to make responsible for the corporate debts the innocent stockholders whose personal liability in no wise entered into the relations between the creditor and the corporation at the time of the transaction in question. As was said in *Whitney v. Wyman et al.*, 101 U. S. 392, 25 L. Ed. 1050:

"It seems to us entirely clear that both parties understood and meant that the contract was to be and in fact was with the corporation, and not with the defendants individually. The agreement thus made could not be afterwards changed by either of the parties without the consent of the other. *Utley v. Donaldson*, 94 U. S. 29, 24 L. Ed. 54."

Additional authorities supporting our conclusions are *Doty et al. v. Patterson et al.*, 155 Ind. 60, 56 N. E. 668, and authorities cited: *Imperial Building Co. v. Chicago Open Board of Trade*, 238 Ill. 100, 87 N. E. 167; *Snider's Sons' Co. v. Troy*, 91 Ala. 224, 8 South. 658, 11 L. R. A. 515, 24 Am. St. Rep. 887; *Richards v. Minnesota Savings Bank*, 75 Minn. 196, 77 N. W. 822; *Planters' & M. Bank v. Padgett*, 69 Ga. 159; *American Salt Co. v. Heidenheimer*, 80 Tex. 344, 15 S. W. 1038, 26 Am. St. Rep. 743; *Stout v. Zulick*, 48 N. J. Law, 599, 7 Atl. 362; *Merriman v. Magiveny*, 12 Heisk. (Tenn.) 494; *Gartside Coal Co. v. Maxwell* (C. C.) 22 Fed. 197; *West Winsted Savings Bank v. Ford*, 27 Conn. 282, 71 Am. Dec. 66; *Town of Searcy v. Yarnell*, 47 Ark. 269, 1. S. W. 319; *Humphreys v. Mooney*, 5 Colo. 282; *Andrews v. National F. & P. W'ks*, 77 Fed. 774, 23 C. C. A. 454, 36 L. R. A. 153. This court recognized the principle here announced in *Lynch v. Per-*

*ryman,* 29 Okla. 615, 119 Pac. 229, Ann. Cas. 1913a, 1065, where it was said:

"The rule, generally, is, as announced in the case of *Esley Mfg. Co. v. Runnels,* 55 Mich. 130 [20 N. W. 823], that: 'Where a body assumes to be a corporation and acts under a particular name, a third party dealing with it under such assumed name is estopped to deny its corporate existence. Such is the general rule, founded upon equitable principles,' and, if any exceptions exist, it is only where 'there are no facts which make it legally unjust to forbid its denial.'"

No such exceptions appear in the case at bar. Section 46, art. 9 (sec. 263), Williams' Ann. Const. Okla., impliedly, at least, recognizes the rights of *de facto* corporations where a *bona fide* organization has been effected, and business commenced in good faith, by declaring that all existing charters or grants of special or exclusive privileges, under which a *bona fide* organization shall not have taken place and business commenced in good faith at the time of the adoption of the Constitution, are ineffective and shall thereafter have no validity.

Passing to the next question, that of the individual liability of the defendants arising out of their representations to the plaintiff that the corporation had been dissolved, and a partnership formed in its stead, it is insisted by defendants in error that again plaintiff is estopped by reason of its participation as a creditor in the bankruptcy proceedings of the corporation. From the statement of the account it appears that the credit extended to the alleged partnership was during the month of March, 1908, and that the representations made were either prior thereto or not later than the 1st day of July of said year. The adjudication in bankruptcy was had July 2, 1908. The dividends were received and accepted by plaintiff during the months of October and December immediately following. The insolvency and subsequent bankruptcy of the corporation did not enlarge the liability of the stockholders, neither did it work a dissolution of the corporation. Clark & Marshall on Private Corporations, p. 863; *Topeka Paper Co. v.*

*Oklahoma Pub. Co.*, 7 Okla. 220, 54 Pac. 455. Even though plaintiff may have had the right, based upon the alleged representations made by the alleged partners, to proceed against them individually, yet having elected, with full knowledge of the facts, to proceed against the corporation by filing its claim with the trustee, and participating in and accepting the dividends of the corporation, it thereby waived its right to hold the defendants as individuals. Having made an election between two courses, with knowledge of the facts, it waived the one not chosen. The positions assumed by it are irreconcilable. If the alleged partnership was liable both for the account incurred during March, and on the alleged agreement of the partners to assume the then existing corporate debt evidenced by the note of the corporation, the latter was not. While, on the other hand, if the *de facto* corporation was liable, clearly no individual liability would attach to the shareholders, unless by virtue of some statute.

An estoppel by record is the preclusion to deny the truth of matters set forth in a record, whether judicial or legislative, also to deny the facts adjudicated by the court of competent jurisdiction, 16 Cyc. 684; Herman on Estoppel and Res Judicata, secs. 27, 28, 29. In Clark & Marshall on Private Corporations, pp. 274, 275, it is said that an estoppel to deny the existence of a pretended corporation may also arise from a matter of record, as from a recognizance purporting to be in favor of a corporation, or a judgment either for or against a corporation. It is further said:

"A person who sues a corporation as such thereby admits the legality of its incorporation, and is estopped from denying it in that suit. And the same is true where a person files a cross bill or petition, or a counterclaim, against a corporation. * * * In an action by a corporation, the defendant cannot deny the plaintiff's existence as a corporation after admitting it by his plea or answer, and he admits its corporate existence by going to trial on the merits or pleading to the merits, instead of pleading want of incorporation."

By the filing of proof of its claim in the bankruptcy proceedings, it was of necessity adjudicated that the *de facto* corporation was indebted to the plaintiff on the account, for the balance of which it is sought to hold the individuals liable as partners. The position of the plaintiff in the present case is utterly inconsistent with its position before the bankruptcy court, as it now contends that, regardless of the question of incorporation, the defendants were liable under an express agreement entered into by them as partners. This we hold it cannot do. In legal effect the presentation and allowance of its claim against the bankrupt estate was a determination against it of the liability of the corporation, and is as binding as if plaintiff had prior to the bankruptcy adjudication brought suit against the corporation to recover its indebtedness. In *Clausen v. Head et al.,* 110 Wis. 405, 85 N. W. 1028, 84 Am. St. Rep. 933, a somewhat similar state of facts is found. The law of the case is alike applicable to both questions here considered. The syllabus of the opinion follows:

"Where a person deals with an association of individuals as a corporation, such dealing, by estoppel, as to such transaction, fixes the status of the company to be what it was represented and recognized to be therein. Where certain persons associated together assumed to be a corporation, and as such executed an assignment for the benefit of creditors, and a creditor filed his claim in such assignment proceedings, the claim, if in existence against the association in any capacity, became a claim against the company as a corporation and the assignee in his representative capacity. Even though the creditor, before filing his claim, was not bound by estoppel to recognize the association as a corporation as his debtor, and could have proceeded against the association as a corporation outside of or within the assignment proceedings, or against the members thereof as partners, yet having made an election between the two courses, with knowledge of the facts, by filing his claim with the assignee of the corporation as such, he thereby waived the one not chosen."

Other authorities in support of the rule are *Cresswell et al. v. Oberly,* 17 Ill. App. 281; *Lombard v. Chicago Sinai Congregation,* 64 Ill. 477; *Ward v. Minnesota & N. W. Co.,* 119 Ill.

287, 10 N. E. 365; *Pochelu v. Kemper,* 14 La. Ann. 307, 74 Am. Dec. 43; *Shields v. Clifton Hill Land Co.,* 94 Tenn. 123, 28 S. W. 668, 26 L. R. A. 509, 45 Am. St. Rep. 700; *Estey Mfg. v. Runnels;* 55 Mich. 130, 20 N. W. 823; *Shoun v. Armstrong et al.,* 59 S. W. (Tenn. Ch. App.) 790; *McClinch v. Sturgis,* 72 Me. 288, 297; *Stoutimore v. Clark,* 70 Mo. 471; *First Nat. Bank v. Dovetail, etc., Co.,* 143 Ind. 534, 42 N. E. 924; *Hinsdale v. Larned,* 16 Mass. 65; *Kuypers v. Reformed Dutch Church,* 6 Paige (N. Y.) 570; *Buellesbach v. Sulka et al.,* 94 N. Y. Supp. 1; *Black River Imp. Co. v. Holway,* 85 Wis. 344, 55 S. W. 424; *National Mutual Building Ass'n v. Ashworth,* 91 Va. 706, 22 S. E. 521; *Lillard v. Porter,* 2 Head (Tenn.) 177; *Etowah Milling Co. v. Crenshaw,* 116 Ga. 406, 42 S. E. 709; *Montgomery v. Seaboard Air Line Ry.,* 73 S. C. 503, 53 S. E. 987. Counsel for plaintiff in error place much stress upon the decision of the Circuit Court of Appeals in *Harrill v. Davis,* 168 Fed. 187, 94 C. C. A. 47, 22 L. R. A. (N. S.) 1153, but a discriminating examination of that case will show a very different question was before the court. All but $400 of the debt sued for was contracted before the alleged corporation made any effort to file its articles of incorporation with any one, and it was said by the court:

"Under the general law of Arkansas in force in the Indian Territory, the filing of articles of incorporation with the clerk of the Court of Appeals was a *sine qua non* of any color of a legal corporation. Without that there was not, and there could not be, an apparent corporation or the color of a corporation. * * * The defendants cannot escape individual liability for the $4,700 on the ground that the Coweta Cotton & Milling Company was a corporation *de facto* when that portion of the plaintiff's claim was incurred, because it then had no color of incorporation, and they knew it, and yet actively used its name to incur the obligation."

Again, in the course of the opinion:

"One who deals with parties who masquerade under a name which represents no corporation *de facto* is no more estopped from denying that it is a corporation than he would be from denying that they constituted or acted for the Union Pacific

Railway Company, or any other well-known corporation, when they did not. The fact that the plaintiff dealt with and treated the Coweta Cotton & Milling Company as a corporation did not estop it from denying that it was such before the defendants filed their articles of incorporation, because it was not a corporation *de facto* before that time. * * * "

Further it was said:

"They represented themselves to be a corporation when they knew they were not; under the name of a corporation which did not exist they purchased these goods and services."

Obviously the case does not support the position of the plaintiff in error, the facts being altogether dissimilar. The true rule in such cases is recognized by Judge Sanborn in said case, wherein he says:

"The general rule is that parties who associate themselves together and actively engage in business for profit under any name are liable as partners for the debts they incur under that name. It is an exception to this rule that such associates may escape individual liability for such debts by a compliance with incorporation laws or by a real attempt to comply with them which gives the color of a legal corporation, and by the user of the franchise of such a corporation in the honest belief that it is duly incorporated."

An able differentiation of the facts in this case from the rule applicable to the liability of *de facto* corporations is found in *Magnolia Shingle Co. v. J. Zimmern's Co.* (Ala.) 58 South. 90.

Finally, it is insisted that the court erred in sustaining a demurrer to paragraphs 3 and 4 of the plaintiff's amended reply. That part of the reply to which the demurrer was sustained sought to hold the defendants individually liable by reason of the fact that, while there was but $20,000 of the capital stock of the corporation subscribed, yet the defendants as directors and officers in said corporation had permitted it to become indebted in a sum in excess of $60,000. While numerous objections are made to the legal sufficiency of these paragraphs of the reply, all of which present serious questions, but one is necessary for our determination. Section 1297, Comp.

Laws 1909, under which it was sought to fix the individual lia-bility of the defendants, provides in part:

"The directors of corporations must not  *  *  *  cre-ate debts beyond their subscribed capital stock.  *  *  *  For a violation of the provisions of this section the directors under whose administration the same may have happened  *  *  * are, in their individual and private capacity, jointly and sever-ally liable to the corporation, and to the creditors thereof, in the event of its dissolution, to the full amount of the  *  *  * debt contracted."

[It will be noted that the cause of action in the first instance is given to the corporation, and in the event of dis-solution to the creditors thereof. We have already seen that the mere fact of the corporation having been declared a bankrupt did not work its dissolution. Hence, there being no dissolu-tion, no cause of action accrued, except to the corporation or its trustee in bankruptcy. In *Topeka Paper Co. v. Oklahoma Publishing Co., supra,* it was sought to hold directors individu-ally liable under the same statute. A recovery was denied, and it was said in the opinon:

"The act by which the defendant corporation undertook to associate itself with the Press-Gazette corporation, and to form a new corporation, and receive stock therein in fixed pro-portions, is not, in our view, a 'division, withdrawal or pay-ment' to the stockholders of the defendant corporation of any part of its capital stock. And, if it were, the liability would not accrue until, in the terms of the statute, 'in the event of is dissolution.' Therefore, before any liability could be claimed or set up, or could have accrued, so that an action could be brought against the defendants for the debts of the cor-poration.  *  *  *  which, as is expressly provided in sec-tion 968 Statutes 1893, could only have taken place upon the 'expiration of the time,' limited by its articles of incor-poration, or by the judgment of a competent court,"

The demurrer was properly sustained.

From a careful examination of the record, we are of the opinion that no error was committed in the trial court, and its judgment should in all things be affirmed.

By the Court: It is so ordered.