## CHILDS *vs.* SMITH.

55b    45
68 AD³333

By an agreement between the parties, for the sale and purchase of land, the sum of $2000, a part of the purchase money, was to become due from the defendant to the plaintiff when a brick and peat company, which the parties proposed to form, should be organized. And when said company should be organized, the plaintiff was to take one-fourth of the stock (over and above the working capital and the one-fourth that was to be received in part payment for the farm) and to pay the defendant, therefor, the sum of $5000.

*Held,* 1. That these two sums of money, viz., $2000 from the defendant to the plaintiff, and $5000 from the plaintiff to the defendant, becoming due at the same identical period of time, the defendant could not be, at that moment, legally indebted to the plaintiff, but the reverse.

2. That there was nothing, in a finding of fact by the referee that the plaintiff's portion of the stock, and the payment of $5000 therefor, were assumed by a third person, that released the plaintiff from his liability to the defendant; in the absence of any finding that the defendant agreed to any release of the plaintiff, or to any change of the plaintiff's liability to him. That the only legal inference that could or might be drawn, was that the defendant consented that such third person should own the stock if he paid for it and discharged the plaintiff's liability to pay.

3. That if the company contemplated by the agreement was organized, then the defendant was not, on that day, indebted to the plaintiff; the sum due from him being less than that owed by the plaintiff; and if the corporation had not been, and was not formed, before the commencement of the action, then the period of the defendant's indebtedness had not arrived.

4. That the meaning and intent of the parties was, that by the organizing, or forming, the corporation which they were to create, the contingency would arise, or the condition would be performed, upon which the $2000 would become due. And that if, by a failure to organize the company, the time for paying that sum had not arrived, the plaintiff could not recover it; especially where it did not appear that he had even put the defendant in default by a demand, and a refusal, to perfect the organization.

5. That the agreement of the defendant to pay the $2000 being conditional, viz., to pay when the corporation therein mentioned should be organized, the plaintiff could recover only by showing that such condition had been performed by an organization of the company in the manner directed by the statute.

When a statute which grants power or authority has expressly fixed, limited or declared the time when such authority shall begin to be exercised, all other time is excluded. *Expressio unius est exclusio alterius.*

Under the general act authorizing the formation of corporations for manufacturing, mining or mechanical purposes, (*Laws of* 1848, *ch.* 40,) which requires a certificate to be filed in the county clerk's office, and in the office of the Secretary of State, stating the name of the corporation to be formed, and the

Childs *v.* Smith.

nature of its business, &c., and declares that *"when* such certificate shall have been filed," the persons who shall have signed and acknowledged the same, and their successors, shall be a body politic and corporate, &c., it is essential that such a certificate shall be filed in the offices specified. Until that is done, no corporation can be formed.

However necessary or convenient a meeting of the persons intending to constitute themselves a corporation, the adoption of resolutions or by-laws, choice of officers, or any other proceedings may be, in securing a due organization, and to bind the action of its members to that object, whether performed before or after their incorporation, they are of themselves no part of the statutory requirement; and they confer no corporate power—no legal right to act as a corporation.

Such acts of the parties, without even an act of user, do not create either a corporation *de facto*, or a corporation *de jure*, as between the parties themselves.

Where each of the parties to an agreement had a claim, under it, against the other, contingent, or conditioned to become due, upon the formation of a corporation; *Held* that this meant a *legal* corporation; and that each party was presumed to know what requisites the law demanded, in order to create a corporation.

APPEAL from a judgment entered upon the report of a referee. The action was to recover $3000, part of the consideration of a farm conveyed to the defendant, in the town of Saratoga Springs. The defendant sets up in his defense, among other things, that the farm in question was conveyed upon certain conditions, and to be paid for in the manner and according to the agreement set up in the answer, and not otherwise; and that the conditions upon which the payment was to be made have never been performed; and also that the sum mentioned to be paid was conditional, depending upon an agreement on the part of the plaintiff, which has never been performed. The action was referred to a sole referee, who reported in favor of the plaintiff, and directed judgment for $2253.91, with costs. From this judgment the defendant appealed. The facts found by the referee, and his conclusions of law, are as follows:

*First.* That on the 18th day of April, 1867, the plaintiff was the owner of a farm of about 150 acres, situate on

Union avenue, about two miles east of Saratoga Springs, in the county of Saratoga.

*Second.* That said farm was then incumbered by two mortgages, amounting in the whole, including interest to that date, to the sum of $10,000.

*Third.* That about 50 acres of said farm was muck and clay land, which the parties to this action then supposed was valuable for the purpose of manufacturing brick and peat therefrom.

*Fourth.* That on the said 18th day of April, 1867, the said plaintiff sold and conveyed to the defendant the above mentioned farm, excepting about four acres therefrom. That the same was conveyed subject to the said two mortgages.

*Fifth.* That the agreement between the said parties, and under which the conveyance was made, was in substance as follows: The plaintiff to sell the said farm of 150 acres to the defendant for the price or sum of $20,000, to be paid by the defendant as follows: the defendant to assume and pay the two mortgages for $10,000; two thousand dollars to be deducted or allowed for the four acres reserved by the plaintiff; the plaintiff to have one-fourth or a one-fourth interest in the above mentioned fifty acres of clay and peat land, for which he was to allow $5000 on said purchase price, and the remaining sum of $3000 to be paid by the defendant to the plaintiff, in cash, as follows: $1000 at or within a few days from the time of delivering the deed, and the remaining sum of $2000 when the brick and peat company (which the said parties then proposed to form) should be organized. The said parties to form a company upon the said fifty acres of clay and peat land, with a capital of $150,000; the company to reserve $70,000 of the stock for working capital; the remainder of the stock to be divided as follows: one-fourth part, $20,000, to belong to the plaintiff; one-half, $40,000, to belong to the defendant; and the other one-fourth part, $20,000,

when the company was organized, the plaintiff was to take and pay the defendant therefor the sum of $5000; the plaintiff stating to the defendant, at the time, that he believed that if the interest was paid on the said two mortgages, which would be due about the first of July then next, the mortgages could remain, and he, the plaintiff, would see the mortgagees and endeavor to have them remain if such interest was paid; but there was no agreement by the plaintiff to procure any extension of said mortgages, or either of them.

*Sixth.* That upon the delivery of said deed, and on the said 18th day of April, 1867, the defendant took possession of the said farm and leased the same for farm purposes, reserving the right to use the said fifty acres of clay and peat lands for the purpose of developing the same.

*Seventh.* That upon receiving the said deed, or soon thereafter, the defendant made and delivered to the plaintiff his promissory note, payable at bank, for $300; and on or about the 16th day of August, 1867, the defendant delivered to the plaintiff two acceptances for $350 each, one due in sixty days from date, and the other in ninety days from date—thus making the $1000 that was to be paid by the defendant to the plaintiff on the delivery of said deed.

*Eighth.* That immediately after the said deed was delivered to the defendant by the plaintiff, the plaintiff, defendant and one William B. Laithe, executed and acknowledged articles of incorporation (under the statute of the State of New York in relation to the formation of corporations for manufacturing, mechanical and chemical purposes) for the purpose of organizing a brick and peat company on the said fifty acres of clay and peat land, as contemplated by said agreement. That such articles of incorporation were drawn up by the defendant, bearing date April 29, 1867, and were duly acknowledged before the proper officer on the 3d day of May, 1867. That the

Childs *v.* Smith.

amount of capital stock of said company, mentioned in said articles, was one hundred and fifty thousand dollars.

*Ninth.* That upon signing said articles of incorporation, and on the 30th day of April, 1867, the said plaintiff, defendant and Wm. B. Laithe, assumed to act as a corporation, and met as such, electing officers and making provision for procuring or perfecting the title in the said fifty acres to the company; and at such meeting the defendant was elected president of said company, the plaintiff was elected vice-president, and the said William B. Laithe was elected secretary and treasurer; and the defendant proposed rules and by-laws for the government of said corporation, which were adopted, and with the certificate of incorporation and other proceedings, were entered by direction of the defendant in a book procured and used as the record-book of said corporation. Action was also taken at said meeting in relation to completing the grounds and yards on said fifty acres, and procuring machines for the purpose of manufacturing as soon as the company should decide what machine they would use for that purpose.

*Tenth.* The said articles of incorporation were never filed in the Secretary of State's office, neither was a copy or duplicate made and filed in the clerk's office of the county of Saratoga; but the same, by the direction of the defendant, were delivered to William B. Laithe to be filed in the Secretary of State's office.

*Eleventh.* The defendant neglected to pay the interest on said two mortgages, when the same became due, in July, 1867, and the said mortgages were foreclosed by a sale of the mortgaged premises, and were purchased under said sale by John C. Hulbert, Esq., of Saratoga Springs, who is now the owner thereof. That said sale embraces the said fifty acres of clay and peat land. The foreclosure was commenced soon after the 1st of July, 1867, and the premises were sold in the fall of 1867.

*Twelfth.* That after the foreclosure and sale of said premises under said mortgages, nothing more was done in relation to the organization of said corporation, and the same was abandoned.

*Thirteenth.* That the said defendant, Smith, has not paid to the plaintiff the said sum of $2000, or any part thereof.

*Fourteenth.* That the $20,000 of stock which by said agreement was to be taken by the plaintiff, and $5000 thereof paid, was by the arrangement of the parties assumed and taken by the said William B. Laithe.

*Fifteenth.* That the brick and peat company, as proposed to be formed by the parties hereto, was formed as between them and the said Laithe, and as regards third persons, and the same became and was a corporation *de facto*, and was so formed as between the parties thereto; that the contingency upon which the said $2000 was to become payable, had happened before the commencement of this action.

The referee found, as conclusions of law, that the defendant was indebted to the plaintiff in this action, in the sum of $2000, with interest thereon from the first day of July, 1867, amounting in the whole to the sum of $2253.91. That the same was due, and was due at the time of the commencement of this action. He therefore directed judgment to be entered in favor of the plaintiff and against the defendant for the sum of $2253.91, together with costs and disbursements to be adjusted.

*J. C. Hulbert,* for the plaintiff.

*J. A. Shoudy,* for the defendant.

POTTER, J. If the learned referee has correctly found the facts in this case, I find myself entirely unable to sustain his conclusion of law, that the defendant is indebted to the plaintiff in the sum of $2000, with interest from the

first day of July, 1867. He finds that by an oral agreement between the parties, this sum of $2000 was to become due from the defendant to the plaintiff when "the brick and peat company," which the parties then (in April, 1867) proposed to form, should be organized; and, in the same paragraph, he also finds that when the company (was) should be organized the plaintiff was to take one-fourth of the stock, (over and above the working capital, and over and above the fourth that was to be received in part payment of the farm,) and to pay the defendant therefor the sum of $5000. By this finding, these two sums of money, to wit; $2000 from the defendant to the plaintiff, and $5000 from the plaintiff to the defendant, became due at the same identical period of time. It is the simplest logic that proves the proposition that if, at a given period, the defendant became liable to pay the plaintiff the sum of $2000, and the plaintiff to pay the defendant $5000, the latter could not be, at that moment, legally indebted to the former, but the reverse. There is nothing in the fourteenth finding of fact, that the plaintiff's portion of stock, and the money to be paid therefor, was assumed to be paid by William B. Laithe, that releases the plaintiff from his liability to the defendant; no fact is anywhere found that the defendant agreed to any release of the plaintiff, or to any change of liability of the plaintiff to him, The only legal inference that can or might be drawn, is that the defendant consented that Laithe should own such stock if he paid for it, and discharged the plaintiff's liability to pay. It is still more inexplicable to my mind, how it is demonstrated that these two cross liabilities of the parties can be created by the same oral agreement, relating to the same transaction, equally depending upon the consummation of the same enterprise for their existence as liabilities from the one to the other, and to accrue as such liabilities at the same moment of time, to wit, upon the organization of an incorporation to be called "The Saratoga Brick and Peat Company,"

and yet the one to be held liable and the other not. If this company was organized, as is found by the learned referee in his fifteenth finding of fact, but which I think is a finding of law, then the defendant was not on that day indebted to the plaintiff. It is equally clear by this theory of the case, that if the incorporation had not been, and was not, formed before the commencement of this action, then the period of the defendant's indebtedness had not arrived, according to the finding of facts by the referee. Inasmuch as the legal organization of this company, in my opinion, is a question of law, it is important that we examine that point.

The things performed by the parties in order to constitute an organization are matters of fact. Whether the performance of those things does constitute an orgnization, is a question of law. These are not changed by their classification in the findings by the referee. The referee, I think, correctly interprets the meaning and intent of the parties in their agreement, that by the organizing or forming this corporation which they were to create, the contingency would have arrived, or the condition would be performed, upon which the $2000 would become due.

As the formation of this body was not directly a legislative act, it could only become a corporation by a compliance with the provisions of the general act which authorizes their organization. (*Laws of* 1848, *ch.* 40.) Under this act and its amendments, three or more persons may make, sign and acknowledge before a proper officer, and file in the office of the clerk of the county in which the business of the company shall be carried on, and a duplicate thereof in the office of the Secretary of State, a certificate in writing, in which shall be stated the corporate name of the company, and the objects for which the corporation shall be formed, &c. It is found by the referee as a fact that no certificate was filed in the office of the clerk of Saratoga county, and no duplicate was ever filed in the office of the

Secretary of State. How then did they become a corporation, and when? How did they become such a corporation as by their agreement they intended? The second section of this statute forbids all inferences or conclusions, which may be drawn from other acts of the parties, by declaring a specific mode, and the particular acts to be performed, which do constitute them a body corporate; and also expressly declares *when* they become such. This, by an acknowledged rule of construction, excludes all other modes. "*When* the certificate shall have been filed as aforesaid, the persons who shall have signed and acknowledged such certificate, and their successors, shall be a body politic and corporate," &c. There is no statute, I have been unable to find any common law, that authorizes or allows of any other time *when* a corporation of this kind can be formed, under this general law, than that of the *time* of filing the certificate and its duplicate as aforesaid. When a statute which grants power or authority has expressly fixed, limited or declared the time when such authority shall begin to be exercised, all other time is excluded. *Expressio unius est exclusio alterius.* The statute nowhere makes a meeting of the individuals who intend to constitute themselves a corporation; it nowhere makes resolutions, by-laws, or choice of officers, or any other formality prior to the filing of such certificates, the creation of such *corporation,* or the evidence of their existence as such; such acts are not mentioned as having anything to do with their creation; nor do I know of any adjudication of any court to that effect. However necessary or convenient all such proceedings may be in securing a due organization, and to bind the action of its members to that object, whether performed before or after their incorporation of themselves, they are no part of the statute requirement, and they confer no corporate power, no legal right to act as such. The preparation of books and by-laws, and the writing out their proceedings therein before pre-

paring their articles of association, might be very good evidence of the intent of the parties at some future day to become incorporated, but it is nowhere made legal evidence of corporate existence or corporate power, as between themselves, or as to third persons. The referee finds that such acts of the parties were the formation of a corporation *de facto* as to third parties; and that it was so formed as between the parties to this action. Such a finding was unnecessary and immaterial, so far as relates to third persons; no such persons are concerned in the case; and such a finding, as between the parties themselves, whom the law presumes knew it was not true, was error. These parties are presumed to know the law. Each party as well as the other, knew that no legal corporation had been formed. Each had a claim against the other, contingent, or conditioned to become due, upon the formation of a corporation; which means, of course, a legal corporation. Each party is presumed to know what requisites the law demanded in order to create a corporation. Each could make his demand against the other mature and become due, by a creation in conformity with the provisions of the statute. The only agreement or promise of the defendant to pay this $2000, by the proofs, was conditional. The plaintiff could only recover by showing that condition to have been performed. The plaintiff on his part neither proceeded to procure such a compliance with the law, nor made a demand of the defendant to comply with the condition on his part, and of course was met with no refusal by him to act in the matter. The plaintiff's demand was not therefore due when he commenced his action. The period had not arrived when by his agreement it was to become due. He has not even put the defendant in default by showing a demand and refusal on his part to perfect the organization by which it was to become due. It was as much the duty of the plaintiff as of the defendant to see that the organization and act of incorporation was perfected;

indeed, the evidence shows him most in fault. When the articles of incorporation had been prepared by the defendant, and signed and acknowledged by him and the other intended corporators, on the day of their execution, they were delivered to the plaintiff by the defendant; this was the plaintiff's own evidence. Instead of filing them with the clerk of the county and making and filing a duplicate with the Secretary of State, as the statute required, he kept the original and afterwards sent it to Mr. Laithe at Albany, who did not receive it till July 20th, and from that time Laithe held, or kept them, until after this action was commenced, which was on the 27th November, and he (Laithe) then sent it to the plaintiff's attorney. This Mr. Laithe was a party to these articles, and whom the referee finds was to take the plaintiff's stock, as a part of the arrangement. It may, or may not be, significant of design on the part of Laithe who was to pay $5000, as the referee finds, to delay the filing of these articles, and the creation of the corporation, and thereby also delay his own payment. The referee has found nothing on this subject; but it is clear that any delay that is attributable to Laithe is not to be charged against the defendant.

It is very clear from the whole case, and the facts found, that the whole negotiations of the parties and the agreements of liability to each other, were to depend upon the organization, incorporation and success of a stock company for the manufacture of brick and preparation of peat; and that the failure and abandonment by the parties of that enterprise carries with it the basis and consideration upon which the agreements to pay were chiefly made. If this is so, it is unjust that one of the parties should bear all the burthens of the failure. It is true, that under the agreement, the defendant entered into the possession of a largely incumbered farm, and had a few weeks' possession, and until the incumbrances drove him therefrom. It is also true that he paid the plaintiff $1000 of the consideration,

and $300 of interest on the mortgages, with which it was incumbered. So the plaintiff also entered into the possession of a part of the consideration. The defendant's possession of the part of the farm that was clay and peat land, was as trustee for his associates, and was as much the possession of the plaintiff as of the defendant. The possession of the remainder was subject to the mortgages which all the parties knew endangered their future success; for the mortgages covered the peat land also, and as to this, each of the other parties was in interest bound to provide against.

The authorities cited by the plaintiff to prove that corporations, or persons acting and holding themselves out to be such, are estopped from denying their legal incorporation to third persons, and to parties who have been induced to give credit to their representations, are not controverted. The proposition is sound law, but has no application to this case. Here, there was no holding out to third persons; no person is here to complain of having given credit to them as a corporation. The whole transactions were confined to themselves, and among themselves all were equally well informed; and all and each of them knew that there was no incorporation; nobody was misled; nobody deceived.

What then was the *intent* of the parties, by their agreement, whose obligations were to become payable and mature, upon the organization of a corporation? Did they intend it should be a real, a legal corporation, or a mere bogus or sham organization? The action of the parties, subsequent to the agreement, shows that they were not ignorant of what the law required. The articles of association, as drawn up, were under the provisions of the act of 1848, in relation to the formation of corporations for manufacturing, mechanical and chemical purposes, for organizing a brick and peat company. It is clear, then, that in this they gave practical construction to the intent

Childs *v.* Smith.

of their agreement, and that the intent was a real incorporation, such as that statute authorizes, and no other.

I think the learned referee is also mistaken as to there being a *de facto* corporation created.  In no one of the cases cited as authority has there been the omission to file certificates of some kind, and of user on the part of the corporations under it.  In such cases, where there has been user, defects in their organization do not relieve them from liability as to third persons and to others who have given them credit.  They are then as to such persons a corporation *de facto;* but as between themselves, all equally responsible for corporate vitality upon the performance of the act, which alone creates their existence, and without even an act of user, they become neither a corporation *de jure* nor *de facto.*  It appears to me it is not only without precedent, but little less than absurd, to characterize such acts as sufficient to create a corporation even *de facto.*  All the acts upon which this finding is based transpired three days before the signing of the articles, and must, in contemplation of law, have been understood by the parties as demanding a compliance with the statute, to create a corporation, and not that such acts, of themselves, constituted a corporation, for the articles were handed over to be filed.

I have thus far treated this case as adopting the real findings of fact by the referee, and upon the assumption that all the rulings on the trial are without objection.  If we are right in the views we have expressed, then the various rulings of the referee in admitting in evidence the paper signed by the parties, as evidence of the incorporation in question, were error.  Its admission was objected to on that ground, and the objection overruled and exception duly taken.  The 9th section of the statute under which they proposed to organize, expressly provides what shall be the evidence of an incorporation under that act, and it provides no other, to wit: "The copy of any certifi-

Childs *v.* Smith.

cate of incorporation filed in pursuance of this act, certified by the county clerk or his deputy to be a true copy, and the whole of such certificate, shall be received in all courts and places as presumptive legal evidence of the facts therein stated." No statute or common law rule can be found to sustain for that purpose a paper so inchoate and imperfect as that allowed in evidence in this case. By a well established rule of common law, the best evidence which the nature of the case admits must be offered. If the best evidence offered fails to prove the existence of a corporation, it should not be received and acted upon; and the referee erred again, after the plaintiff rested his case, relying on such proof only to establish the existence of a corporation, in refusing, upon request, to strike out such evidence. The referee having acted upon this evidence in his findings, as the case clearly shows, I think the judgment must be reversed, for that reason. The burden of proof to sustain the case was upon the plaintiff, and he failed to make out his case by legal proof. The judgment must, for the reasons given, be reversed.

ROSEKRANS, J., concurred.

BOCKES, J., expressed no opinion.

                                        Judgment reversed.

[SARATOGA GENERAL TERM, November 1, 1869. *Rosekrans, Potter* and *Bockes,* Justices.]