## MARY J. ATTEBERRY, Appellant, *v.* THOMAS F. ATTEBERRY, Respondent.

DIVORCE—CONDONED CRUELTY REVIVED.—While acts of cruelty will be presumed to be condoned by the continued cohabitation of the parties, they will be revived by the subsequent commission of acts of the same nature.

IDEM.—Any conduct which, after reconciliation of the parties in a case of cruelty, creates reasonable apprehension of personal violence, will revive the condoned cruelty.

MARRIED WOMAN—SEPARATE EARNINGS.—Under the law, as it now stands in this state, the wife is entitled to own and hold any property acquired with the proceeds of her own personal labor, and the husband has no right to compel her to turn it over to him.

APPEAL from Douglas County. The facts are stated in the opinion.

*John Kelsay and Hermann & Ball,* for appellant.

*Wm. R. Willis,* for respondent.

By the Court, PRIM, J.:

This suit was brought by the appellant for a dissolution of the marriage contract. In her complaint she charges cruel and inhuman treatment and personal indignities, rendering her life burdensome, and alleges that the defendant has frequently since their marriage threatened the plaintiff with violence, and at divers times struck and beat the plaintiff in a cruel and inhuman manner, and has continuously used threatening and abusive language toward the plaintiff, and kept her in constant fear for her personal safety. And that he did, on the thirteenth day of April, 1874, in Douglas county, Oregon, push the plaintiff in a rude and angry manner, and ordered her to leave their home, and threatened that he would burn the house down over her head if she did not leave, and compelled her to leave and seek shelter for the night at one of their neighbors. And that plaintiff has frequently within the year threatened that he would take the children of the marriage and remove them without the country, where the plaintiff could not see or hear from them. And that she was, on account of the indolence of the defendant, compelled to work and earn the support for the family.

The defendant answers, and denies the cruelty and the threats, or that he has struck or beaten the plaintiff, except in 1867 he struck her with a small switch, and in 1875 he slapped her in the face with his open hand, which he alleges were forgiven in January, 1878, and that the action was not commenced within the statutory time. The answer also denies that he threatened to remove the children from without the country, as alleged in the complaint, but admits that he told plaintiff if he had to give up all his property to her, he would take the children and leave the country.

The plaintiff's reply denies that she forgave the acts of cruelty admitted by the defendant in his answer, and assigns that her reason for living with him after those acts was on account of the tender years of their children, and with the hope and desire that he would reform his conduct toward her, and cease to treat her in a cruel and inhuman manner.

The court decided against the plaintiff, and gave judgment dismissing her bill, and a judgment for costs and disbursements in favor of the defendant, from which the plaintiff appeals.

From the evidence and pleadings it appears that the plaintiff and defendant were married to each other in the year 1865, in the state of Illinois, where they resided for several years, and until they moved to Oregon. There are three children, two sons and one daughter, the issue of said marriage. The boys are thirteen and ten years of age, respectively, and the daughter seven. That in a short time after their marriage, the cruel treatment of defendant was commenced by slapping the plaintiff in the face with his open hand, and by threatening to boot her; and at another time, after their removal to Oregon, about the year 1873, by slapping her in the face without any apparent provocation. These parties continued to cohabit together as husband and wife until the thirteenth of April, 1879, at which time a final separation took place, since which time they have remained apart.

The causes which led to the separation appear to be as follows: She was the owner of some property, consisting of horses and cattle, about seventeen head in all. The property had been purchased with money earned by her own personal labor in the manufacturing and sale of gloves, in washing clothes, in sewing, and in the making of butter for sale, etc. The place upon which they were residing was a piece of government land, the improvements upon which had been paid for with money earned also by her personal labor. That the money to pay for this land had also been furnished by her, but the defendant had managed in some way to procure it from the land office and spend it. That on the morning of the thirteenth of April, 1879, he in-

formed the plaintiff that she must turn over all the stock to him, and allow him to have the full control of the same, or neither she nor the stock could remain on the place any longer.   That if she refused to comply with his request in this respect, he would make it hot for her, and threatened to burn the house over her head.

The plaintiff feeling aggrieved at the injustice of this demand of the defendant, and not being fully advised as to her rights in the premises, saddled a horse and went off to consult a neighbor in relation to the matter.   Returning in the afternoon about four o'clock, she unsaddled the horse and turned it into the pasture, when the defendant, in order to make an exhibition of his authority and carry out his threat, undertook to turn the animal out of the pasture.   The plaintiff went to the gate and undertook to prevent him from so doing, when the defendant shoved her away in a rude and angry manner, saying that neither she nor the animal could remain on the place.   The plaintiff then went away and never returned to him again.   A Mrs. Butler, who was residing at the house with them, testifies that on another occasion, in April, 1879, she was present when the defendant drew a chair upon the plaintiff in a threatening manner and was prevented from striking plaintiff by her stepping in between them and begging him not to strike her.

It also appears that after the commencement of this suit the defendant went to Canyonville, where plaintiff had their daughter for the purpose of attending school, and took her away from her by force, and because the plaintiff caught him by the coat and thus endeavored to prevent him from taking the child off where she could never see her again, he knocked her down.   This assault, having been made since the commencement of the suit, can not be considered as one of the grounds for the divorce.   Two of the acts of cruelty specially charged in the complaint as having been committed in the years 1867 and 1875, respectively, are admitted by the defendant, but it is claimed by him that these acts were specially forgiven by the plaintiff about June, 1878.

Plaintiff, however, denies that those acts were specially forgiven by her, and assigns as a reason for living with him

after the commission of those acts the tender years of their children and the hope that he would reform his conduct toward her and cease to beat her in such a cruel and inhuman manner.    There being no special condonation proved, none existed, except such as must be implied from continued cohabitation of the parties after the commission of said acts. But while the acts were condoned by the continued cohabitation of the wife, they were revived by the subsequent commission of acts of the same nature.    "Any conduct which, after reconciliation of the parties in a case of cruelty, creates reasonable apprehension of personal violence, will revive the condoned cruelty; in fact, it is cruelty itself."    (2 Bish. Mar. and Div. 58; *Gardner* v. *Gardner*, 2 Gray, 434.)

"To revive condoned cruelty there must be something of the same kind as would have supported a suit originally for cruelty, such as violence or threats of violence; but the acts need not be of the same stringent kind; something short will be sufficient, provided it be shown that the husband continues in the same state of mind, and is incapable of controlling himself, as when he actually committed the former acts of cruelty."    (*Davis* v. *Davis*, 55 Barb. 55.)    Legal cruelty is defined by Mr. Bishop to be "such conduct in one of the married parties as renders further cohabitation dangerous to the physical safety of the other, or creates in the other such reasonable apprehension of bodily harm as materially to interfere with the discharge of marital duty." (1 Bish. Mar. and Div. 715.)

We think the charge of cruel and inhuman treatment is fully sustained by the evidence, when all the acts of cruelty are considered together, and that plaintiff is entitled to a divorce.

It is, therefore, ordered that a decree be entered dissolving the bonds of matrimony existing between plaintiff and defendant; that plaintiff have the care and custody of their infant daughter, Marie Catherine Atteberry, and costs and disbursements.

Decree of the court below reversed.