SAMUEL R. CHILDS, Appellant, *v.* EZEKIEL S. SMITH, Respondent.

Plaintiff sold and conveyed certain real estate to defendant; a part payment was agreed to be made in cash, when a certain contemplated corporation should be formed. — *Held*, that the organization of the corporation

was not the event which fixed the fact of the indebtedness, but it only marked the time, when the payment of such indebtedness might be exacted, and that such corporation was formed, in the contemplation of the contract, when such acts were done among the associates as would form and set on foot, in practical existence, a body in which they would have, rights, and to which they would owe obligations, although no statutory organization had been perfected.

(Submitted May 30th, 1871; decided September 2d, 1871.)

APPEAL from the judgment of the late General Term of the Supreme Court in the fourth judicial district, reversing a judgment entered in Saratoga county upon report of referee in favor of plaintiff, and granting a new trial.

In April, 1867, plaintiff was the owner of 150 acres of land situated about two miles east of Saratoga Springs, upon which were two mortgages for about $10,000 in the aggregate. Fifty acres of the farm were thought valuable for the manufacture of brick and peat. On the 18th April, 1867, plaintiff conveyed the farm to defendant subject to the encumbrances, upon a parol agreement of sale for $20,000, by which defendant was *to assume and pay the two mortgages of* $10,000; $2,000 to be allowed for four acres reserved by plaintiff; $5,000 to be deducted for one-fourth interest in the fifty acres of peat land to be held by plaintiff, and $3,000 to be paid in cash, of which $1,000 was to be paid in a few days, and $2,000 *when the brick and peat company should be organized.* That company to be formed was, to operate upon said fifty acres with a capital of $150,000, of which $70,000 was to be retained as working capital; $20,000 was to belong to plaintiff; $40,000 to defendant, and $20,000 plaintiff was to take when the company was organized, and pay defendant therefor $5,000. The contract was changed and modified several times as stated in the opinion. *Defendant took possession of the farm on the delivery of the deed and leased it for farming purposes, reserving the fifty acres.* He paid his $1,000 in a note and drafts. He immediately drafted articles for the organization of a company, for the aforesaid purpose under the statute, which were executed and acknowledged by these parties; and

by *Wm. B. Laithe,* who at once met as a corporation, elected officers, defendant being present, adopted by-laws proposed by defendant, all of which proceedings, were entered upon a book .purporting to be a record of the corporation. Steps were taken to prepare the ground and procure a machine for commencing the manufacture. The articles of incorporation were delivered to *Mr. Laithe,* by direction of defendant, to be filed with the secretary of State; but they were not filed in that office, nor any duplicate, with the county clerk. Defendant neglected to pay the interest on the said mortgages. They were foreclosed in July, 1867. After the sale the incorporation was abandoned.

Upon these facts the referee decided defendant was liable for the $2,000.

*W. A. Beach,* for appellant, that for all purposes of corporate business the company was organized. (*Springsteen* v. *Sampson,* 32 N. Y., 703.) That corporate character of company could not be questioned by defendant. (*The B. and A. R. R. Co.* v. *Cary,* 26 N. Y., 75; *Eaton* v. *Aspinwall,* 19 N. Y., 119; *Doyle* v. *Petroleum Co.,* 44 Barb., 239; *Tarbell* v. *Paige,* 24 Ill., 46; *Moses* v. *Breling,* 31 N. Y., 462.)

*J. H. Shoudy,* for the respondent, that the contemplated corporation never had an existence *de jure* or *de facto.* (*M. E. Union Church* v. *Picket,* 19 N. Y., 482; *Eaton* v. *Aspinwall,* 19 N. Y., 119; *Bank of Toledo* v. *International Bank,* 21 N. Y., 542; *B. and A. R. R. Co.* v. *Cary,* 26 N. Y., 75.) That defendant is not estopped from denying incorporation. (*Welland Canal Co.* v. *Hathaway,* 8 Wend., 480; *Burt* v. *Farrar,* 24 Barb., 518; *Kingman* v. *Sparrow,* 1 N. Y., 242; *Frost* v. *Koon,* 30 N. Y., 428; *Shapley* v. *Abbott,* 42 N. Y., 443.)

FOLGER, J. The contract between the parties, as it stood at the commencement of this action, was not formed at once, but was the result of several changes and modifications. In

the first instance (if we take the testimony on which the learned referee seems to have relied), the plaintiff agreed to sell his farm of 150 acres and convey it to the defendant, for the consideration of $20,000. The consideration was to be paid; by the defendant assuming two mortgages upon the premises, which, with accrued interest, were called $10,000; by an exception to the plaintiff from the premises conveyed of four acres, called $2,000; by cash $3,000, to be paid to plaintiff by defendant; and by one quarter interest in a company to be formed to work the clay and peat in fifty acres of the premises, called $5,000; the stock of the company to be $150,000; $70,000 of which was to be reserved as working capital, and $80,000 to be allotted to the parties; one quarter to the plaintiff as part of the consideration of his conveyance, two quarters to the defendant, without payment from him, and another quarter to the plaintiff, for which he was to pay the defendant $5,000 on the organization of the company.

It will be seen that, by this agreement, the defendant obtained the title to the whole farm, save the four acres reserved, upon assuming the payment of the mortgages and interest, and paying $3,000 in cash, and that, practically, he at once resold to the plaintiff a quarter of fifty acres for $5,000. All that the plaintiff gained, was the freeing of the four acres from the lien of the mortgages, the $3,000 in cash, and the securing of an associate in a company to work the clay and peat in the fifty acres, and for this he was to pay $5,000 in cash. And it is important to observe, that here was an absolute and unconditional agreement on the part of the defendant, to pay the whole of the $3,000 upon the delivery of the conveyance.

The first modification of the contract, was as to the time of payment of the $3,000 by the defendant. He was not thereby released from his obligation to pay it, but the time when he was to pay was changed. One thousand dollars was to be paid in a few days after the delivery of the conveyance, and $2,000 when the company should be organized. Manifestly, the organization of a company, was not a condition precedent to

his being obligated to pay. But that expression was used, as a convenient designation of a time when his obligation, already fully incurred and existing, should become matured and enforceable against him.

If the parties meant such an organization as would create a corporation *de jure*, which could successfully maintain itself against an inquiry on the part of the State, then it is evident that the time had not, at the commencement of this action, arrived, at which the $2,000 became due and payable. For the parties had neglected to file certificates of association, in accordance with law. (Laws of 1848, chap. 40.)

But the obligation, at some time, to pay the sum of $2,000, did not rest upon the organization of the corporation either *de jure* or *de facto*. The consideration of the promise to pay that sum, was the conveyance by the plaintiff to the defendant of certain real estate. The conveyance the plaintiff had made and delivered. He had parted with his property and had become entitled to his compensation therefor, at some time. And the organization of a corporation, was not the event which should fix the fact of the indebtedness of the defendant to the plaintiff, but only mark the time when a solution of that indebtedness might be exacted. The conveyance made and delivered, the defendant owed to the plaintiff $3,000; $1,000 thereof was payable in a few days thereafter, and $2,000 thereof could be lawfully demanded when the company was organized.

It seems, then, too strict and technical to hold, that the parties meant that the time of payment would not arrive, until there should be an organization so exactly in accordance with the statute, as that it would successfully meet any scrutiny into its right, which the sovereign power could institute. It is rather to be held, that they meant such acts and doings among the associates, as should form and set on foot, in practical existence, a body in which they should have rights, and to which they would owe obligation, and through which they should possess rights against, and incur obligations to, each other.

This they did. They signed certificate of incorporation; they adopted by-laws; they elected officers; they had, as a corporation, a place of business. The basis on which the company should become the owner of the real estate was agreed upon, and the amount of stock which each associate was to take was agreed upon.

In our opinion, here was an organization of the company sufficient to meet the meaning of the parties, and to make payable the $2,000 agreed to be paid by the defendant.

And here there came in another modification of the contract. By it, the fifty acres of clay and peat land, was by the defendant, to be conveyed to the company subject to the two mortgages. Thus, the defendant would have the clear title to the whole farm, save the four acres reserved to the plaintiff, and the fifty acres to be conveyed to the company, and paying the plaintiff $3,000, and receiving from him $5,000 for one quarter of the stock, would also have made a gain of $2,000 in money. But as this would have been unconscionable, the further modification was also made, that the defendant should also convey, without price to the company, the timber and lumber already prepared for use, and the right to use a certain patent brick machine; and the distribution of the $80,000 of stock was changed so that the plaintiff should receive but the one quarter, which formed a part of the consideration of his conveyance. The defendant should receive the two quarters, but one of them should be held, used, or sold for the benefit of the company, and he should pay into the treasury of the company $5,000. The quarter which was to be taken by the plaintiff, and for which he was to pay $5,000, was to be issued to one Laithe, an associate in the company, for which he was to pay into the treasury $5,000.

Thus the defendant would retain his clear title to two-thirds of the farm, and hold one-fourth of the $80,000 of stock upon paying the plaintiff $3,000, and giving to the company $5,000, and the personal property above mentioned. The testimony of the defendant is, that the farm was worth from seventy-five dollars to eighty dollars, per acre, which would make the two-

thirds worth $7,500. This does not seem an unreasonable arrangement for the parties to make.

Now the referee has found in these terms: "that the $20,000 of stock, which by said agreement was to be taken by the plaintiff, and $5,000 paid therefor, was by the arrangement of the parties, assumed and taken by the said Wm. B. Laithe." Which finding, we, in the light of the testimony on which it is based, construe to mean that this associate, Laithe, was to take the one-fourth of the stock, and pay for it the $5,000, which the plaintiff had agreed to pay; and that thus the plaintiff was relieved from his obligation to pay that sum to the defendant. It is to be observed that the arrangement was made by the parties, the defendant, of course, being one, and assenting thereto. It is not to be inferred that this assent was merely that Laithe, the associate, who took the fourth of the stock off the hands of the plaintiff, was to pay the plaintiff, and the plaintiff still be liable to the defendant therefor. The paper in the handwriting of the defendant which expresses the arrangement, shows how Laithe was to pay for the fourth part. He was to pay $5,000 into the treasury of the company, not to the plaintiff. It is not supposable that he was also to pay another $5,000 to the plaintiff. It is apparent, that with the concurrence of the defendant, Laithe took the place of the plaintiff, as the subscriber for the fourth part of the stock, and was to pay the price thereof into the treasury. By this arrangement the plaintiff was discharged from his liability, to pay to the defendant $5,000 upon the organization of the company. But the liability of the defendant to pay the plaintiff the $2,000 still existed; and as we have stated, was matured and enforceable. It follows, then, that the plaintiff had a right of action therefor, against the defendant, and that the learned referee did not err in rendering judgment in his favor.

Upon the points of the respondent, appear several objections to the rulings of the learned referee, in the receiving and rejecting of evidence. Proof of the acts of the parties toward the legal organization of a company, was properly

received. They were facts in the case. They did not show a full compliance with the statute, nor establish that a corporation was duly formed. But in the view we take of the case, they did show so much done between the parties, as made due and payable within their intent, the money agreed by the defendant to be paid to the plaintiff. The acceptances of the defendant and the two letters from him were properly received. They were acts and admissions pertinent to the issue, and tending to establish the fact of the contract having been made as claimed by the plaintiff. The memorandum, claimed to be a statement of the contract, was properly received. It was proved to have been the result of the negotiations between the plaintiff and the witness, Wm. F. Smith, and testimony was given, tending to show that it had been exhibited to the defendant as such, and that it was accepted by the defendant, as containing the details of the contract between him and the plaintiff.

The defendant offered to prove by the witness, Wm. F. Smith, that when this memorandum was first shown to him, immediately after it was made, he declined to adopt it as his act, or to make any contract on that basis. This testimony the learned referee rejected as immaterial. At the time of this exhibition of the paper to the defendant, he was not one of the negotiators. The bargain was then pending between the plaintiff and the witness, Wm. F. Smith. It was not until after this that the plaintiff and the defendant began to treat. So that any declaration by the defendant to the witness, at the time of the first exhibition of the paper to the defendant, was not material. It was no part of the actings and doings between the parties. It was only an expression of opinion by the defendant to the witness, which certainly did not affect the plaintiff; for it was not shown, nor was it offered to be shown, that this declaration was communicated to or known by the plaintiff.

We do not see that the learned referee, made any error in the other of his rulings, commented on by the respondent;

certainly none which so affects the merits of the case, as to require that we should disturb his judgment.

The judgment of the General Term should be reversed, and that of the referee should be affirmed with costs, to the appellant.

CHURCH, Ch. J., ALLEN, RAPALLO, and ANDREWS, JJ., concur.

Judgment of General Term reversed.