IN THE MATTER OF THE CONSOLIDATION OF THE COURT (ALIAS LIBERTY) STREET METHODIST EPISCOPAL SOCIETY OF ROME AND THE FIRST WESLEYAN METHODIST CHURCH OF ROME, APPELLANTS, *v.* HENRY M. PERRY, GEORGE PILLPORE, GEORGE COWLES, EVAN THOMAS, LEONARD MYERS, AS TRUSTEES OF THE COURT (ALIAS LIBERTY) STREET METHODIST EPISCOPAL CHURCH, RESPONDENTS.

*Statutes authorizing the consolidation of existing religious corporations — chap. 209 of 1875, as amended by chapter 176 of 1876, construed — a corporation cannot be organized simply in order to consolidate it with an existing one — a trustee or member of one religious corporation ceases to be a trustee or member thereof when he joins another — an agreement to consolidate does not take effect until it is proved and recorded.*

Upon an appeal from an order granted on October 8, 1887, vacating an order of a Special Term granted, without notice, on November 11, 1885, consolidating the appellants under the corporate name of the First Wesleyan Methodist Church of Rome, N. Y., it appeared that on July 24, 1862, a religious corporation was duly incorporated pursuant to section 3 of chapter 60 of the Laws of 1813, under the name of "The Trustees of the Court Street Methodist Episcopal Church in Rome," the corporators professing the faith of the Methodist Episcopal Church, and that on December 30, 1862, the corporation received, under the name of the "Court Street Methodist Episcopal Society," the grant of a church edifice and lot on Court street, and continued to own and occupy this property until October 7, 1878, when it was exchanged for a church edifice and lot on Liberty street, and thereafter the corporation of the church was known as "The Liberty Street Methodist Episcopal Church in Rome," but it did not appear that the corporate name was changed pursuant to the statute.

In April, 1885, a petition presented to the Northern New York Conference of the Methodist Episcopal Church, not to continue a preacher assigned by it to take charge of this church, having been refused, troubles and disagreements continually existed between the preacher and such persons until October 6, 1885, when seventy-three out of the eighty-five members of such church signed a paper, reciting their belief that the interests of the said society would be promoted by a change of its name, and pledging themselves "to change our name to the First Wesleyan Methodist Church of Rome, and to adopt the discipline of the Wesleyan Church of America, reorganizing as such, taking our church property with us." On the same day thirty-six members of the church met at the dwelling-house of one of the members and signed a certificate, by which they assumed to incorporate the First Wesleyan Methodist Church of Rome, which was signed by David Byam, Adin H. Butler, Charles Shepherd, Jesse

M. White, four of the members and trustees of the old church; Byam and White were named in the certificate as trustees of the new church. The certificate was proved by a subscribing witness on October 20, 1885; and filed in the clerk's office on October twenty-fourth.

On October sixth an agreement to consolidate these two corporations was also signed by the said Byam, Butler, White and Shepherd, four of the trustees of the old church, and by all the trustees of the new church, to convey all the property of the old church to the consolidated church; and on October twenty-third, the said Byam, Butler, Shepherd and White, still assuming to act as trustees of the old church, signed and verified a petition to the Supreme Court for the consolidation of the two corporations, the seven trustees of the new church signing and verifying a like petition, and upon these petitions an order was granted consolidating the corporations, which order was thereafter vacated by the order appealed from.

*Held,* that there is, in this State, no statute authorizing the organization of a religious corporation for the sole purpose of consolidating it with another, with the ultimate design of acquiring the property of such other and applying it to the maintenance of a church with a different polity and where a somewhat different faith exists.

That the statutes authorizing the consolidation of existing religious corporations (chap. 209 of 1875, as amended by chapter 176 of 1876, section 3) were not designed to authorize the consolidation of an existing religious corporation with one organized solely for the purpose of consolidation, but they were designed to enable existing religious corporations organized in good faith, for the advancement of religious interests, and for a time carried on for such purpose, to consolidate, when it becomes apparent that such interests can be better advanced by the union of the corporations.

That on the 6th day of October, 1885, the date of the execution of the consolidation agreement, the First Wesleyan Methodist Church of Rome was not a legal religious corporation, because the execution of this certificate had not been then proved or the certificate recorded.

That if the First Wesleyan Methodist Church of Rome became a religious corporation on that day, David Byam, Adin H. Butler, Charles Shepard, Jesse M. White, four of the members and trustees of the Court (Liberty) Street Church, became corporators, and two of them, Byam and White, trustees of the Wesleyan Church, by which act the four ceased to be members and trustees of the Court (Liberty) Street Church, and Byam and White were without power to sign the consolidation agreement, or the petition for the consolidation of the churches in behalf of the Court (Liberty) Street Church, so that the agreement and petition were, in fact, signed by but one legal trustee.

That when the majority of the trustees of one corporation are also the trustees of another corporation, boards of trustees so constituted cannot enter into a valid contract for the consolidation of the corporations.

That, as the statutes providing for consolidation confer upon the court the power, in its discretion, to give or withhold an order, even though a legal

contract and petitions for the consolidation of two existing legal religious corporations be duly executed and presented to it, the Special Term, in this case, wisely exercised its discretion in withholding its consent to the attempted consolidation.

APPEAL by the First Wesleyan Methodist Church of Rome and the Liberty Street Methodist Episcopal Church from an order of the Special Term of this court, dated October 8, 1887, and entered in the office of the clerk of Oneida county on the 1st day of May, 1888, confirming the report of a referee. In the notice of appeal it was stated that the appellants also intended to bring up for review on said appeal, the report and decision of the referee.

*Jenkins & Devereux*, for the appellants.

*Scripture & Backus*, for the respondents.

FOLLETT, J.:

Appeal from an order of a Special Term, granted October 8, 1887, on notice, vacating an order of a Special Term granted November 11, 1885, without notice, consolidating The Court (*alias* Liberty) Street Methodist Episcopal Society of Rome and The First Wesleyan Methodist Church of Rome under the corporate name of The First Wesleyan Methodist Church of Rome, New York.

July 24, 1862, a religious corporation was duly incorporated (pursuant to section 3 of chapter 60 of the Laws of 1813) under the name of "The Trustees of The Court Street Methodist Episcopal Church in Rome." The corporators professed the faith of the Methodist Episcopal Church. December 30, 1862, the corporation received, under the name of "The Court Street M. E. Society," a grant of a church edifice and lot on Court street, in Rome, from The Court Street Baptist Society in Rome. In 1862 the county of Oneida was within the Black River Conference of the Methodist Episcopal Church, and remained therein until 1868, when the Central New York Conference was formed, which included said county; and it remained therein until 1872, when the Northern New York Conference was organized, which embraced said county, and within which conference said county now is. In April, 1883, said church applied to the Black River Conference for a preacher; its application was granted, and the church then became and continued a

member of that conference and its successors until 1885, receiving its preachers from said conferences, and, in all respects, recognizing the jurisdiction of the conferences. The church continued to own and occupy its property on Court street until October, 7, 1878, when it was exchanged for a church edifice and lot on Liberty street, and thereafter the corporation (the civil organization) and the church (the religious organization) were known as "The Liberty Street Methodist Episcopal Church in Rome;" but it does not appear that the corporate name was changed, pursuant to the statute. In April, 1884, the Northern New York Conference assigned the Rev. Ebenezer Adams as the preacher in charge of this church, and he entered upon the discharge of his duties; but, before the expiration of the year, many of the members of the church and congregation became greatly dissatisfied with him, and in April, 1885, sixty-one of his parishioners petitioned the conference not to continue him in charge of their church for another year; but the petition was not granted, and he was assigned as the preacher in charge for the next ecclesiastical year. In the language of the referee: "From that time forward until October 6, 1885, troubles and disagreements continually existed between him and such persons, and there was great lack of obedience, by him and such members, to those cardinal doctrines and behests of their denominational faith, which all professed — to promote peace and unity, to bear one another's burdens, to prevent each other's stumbling * * * and to pray and sympathize with each other."

From April, 1885, to October 6, 1885, David Byam, Adin H. Butler, Henry M. Perry, Charles Shepard and Jesse M. White, five in all, were the trustees of said corporation. A few days before October 6, 1885, seventy-three out of the eighty-five members of said church signed a paper, which is called a "pledge," of which the following is a copy: "We, the undersigned, members of The Liberty Street M. E. Church, believing that the interests of said society would be promoted by a change of our church name, relations and discipline, pledge ourselves to change our name to The First Wesleyan Methodist Church of Rome, and to adopt the discipline of the Wesleyan Church of America, reorganizing as such, taking our church property with us." This declaration of intention clearly discloses the motives which actuated these persons

in subsequently attempting to organize another religious corporation and obtain a consolidation of it with the old corporation.

October 6, 1885, thirty-six of the members of the church met at the dwelling-house of one of the members and signed a certificate of incorporation, by which they assumed to incorporate The First Wesleyan Methodist Church of Rome. Before this date no such corporation or church had existed in Rome. This meeting was not held pursuant to any public notice, nor at a place where the persons who met had been accustomed to meet for stated public worship. The execution of this certificate was proved by a subscribing witness October 20, 1885, and the certificate was recorded October 24, 1885, in the office of the clerk of the county of Oneida. In this certificate it is recited: "We, the undersigned, four of the trustees and seventy-one of the late members of the Liberty Street M. E. Church of the city of Rome, Oneida county, N. Y., and whose names and seals are affixed to this instrument, do hereby certify, that on the 6th day of October, 1885, the male members of full age worshiping in the church aforesaid (and being all members of the said Liberty M. E. Church, aforesaid, save fourteen only, and all the trustees save one, and all the stewards save three, believing the interests of said members and society will be promoted and enhanced by a change of our church relations, and desiring to withdraw from the discipline of the M. E. Church and unite with and be subject to the discipline of the Wesleyan Church of America, taking our church property with us), and belonging to a church in which divine worship is celebrated according to the rites of said church not already incorporated, met at No. 9 Court street, in the city aforesaid, for the purpose of incorporating themselves, and did then and there," etc. David Byam, Adin H. Butler, Charles Shepard and Jesse M. White, four of the members and trustees of the old church, signed this certificate, and Byam and White were named in the certificate as trustees of the new church. October 6, 1885, an agreement to consolidate these two corporations (if there were two legal ones) was signed by David Byam, Adin H. Butler, Jesse M. White and Charles C. Shepard, four of the trustees of the old church, and by all of the trustees of the new church, by which it was recited that the new church had neither property nor debts, and that all of the property of the old church should be conveyed to the consolidated

church, which was to be under the discipline of the Wesleyan Church of America. October 23, 1885, Adin H. Butler, David Byam, Charles Shepard and Jesse M. White, still assuming to act as trustees of the old church, signed and verified a petition to the Supreme Court for the consolidation of the two corporations, and on the same day the seven trustees of the new church signed and verified a like petition. Upon these petitions an order was granted at Special Term, consolidating the corporations. November 20, 1885, Henry M. Perry (who was one of the trustees of the old church) and four other members of the church, signed and verified a petition for the revocation of said order of consolidation. Upon the matter coming on to be heard it was referred to a referee to take evidence in respect to the questions of fact in dispute, and to report, with his opinion. A great amount of evidence was taken, the printed record containing 292 pages. The referee reported that the attempted consolidation was illegal, and that the order of consolidation should be vacated; which report was confirmed by the court.

In this state, the purposes for which corporations can be organized are specified in the statutes, and we know of no statute authorizing the formation of a religious corporation for the sole purpose of consolidating it with another for the ultimate end of acquiring the property of the other and applying it to the maintenance of a church with a different polity and with a somewhat different faith. Nor were the consolidation statutes designed to authorize the consolidation of an existing religious corporation with one organized solely for the purpose of consolidation, but they were designed to enable existing religious corporations, organized in good faith for the advancement of religious interests, and for a time carried on for such purpose, to consolidate, when it becomes apparent that such interests can be better advanced by the union of the corporations.

On the 6th day of October, 1885, the date of the execution of the consolidation agreement, the First Wesleyan Methodist Church of Rome was not a legal religious corporation, because the execution of its certificate had not been then proved or the certificate recorded. (*Burt* v. *Farrar*, 24 Barb., 518; *Mokelumne Hill Canal and Mining Co.* v. *Woodbury*, 14 Cal., 424; 8 South. L. Rev. N. S., 528; Morawetz on Corp., § 17.) *Childs* v. *Smith* (55 Barb., 45), which

was reversed on another question by the Court of Appeals (46 N. Y., 34), which court, in considering whether a corporation is legally organized before its certificate of incorporation is filed or recorded, said: "If the parties meant such an organization as would create a corporation *de jure*, which could successfully maintain itself against an inquiry on the part of the State, then it is evident that the time had not, at the commencement of this action, arrived at which the $2,000 became due and payable. For the parties had neglected to file certificates of association in accordance with law."

While these serious defects of organization may not prevent a corporation from having, for some purposes, a legal existence until annulled by an action brought for that purpose, yet such defects are a sufficient reason for refusing an order carrying into effect the proposed consolidation, for, from such a precedent great wrongs and mischiefs might easily flow. But if the First Wesleyan Methodist Church of Rome became a religious corporation October 6, 1885, David Byam, Adin H. Butler, Charles Shepard and Jesse M. White, four of the members and trustees of the Liberty Street Church became corporators, and two of them, Byam and White, trustees of the Wesleyan Church, by which act the four ceased to be members and trustees (§ 2, chap. 79, L. 1875; *Laight Street Baptist Ch.* v. *Noe*, 12 How. Pr., 497) of the Liberty Street Church, and Byam and White were without power to sign the consolidation agreement or the petition for the consolidation of the churches in behalf of the Court (alias Liberty) Street Church. Unless Byam and White were trustees at this time, the agreement and petition were signed by but one legal trustee.

When a majority of the trustees of one corporation are also the trustees of another corporation, boards of trustees so constituted cannot enter into a valid contract for the consolidation of the corporations. (*Stokes* v. *Phelps Mission*, 47 Hun, 570; *Metropolitan Elevated Railroad Co.* v. *The Manhattan Railway Co.*, 11 Daly, 373; *Wardens, etc., of St. James' Church*, v. *Rector, etc.*, 45 Barb., 356; *San Diego* v. *S. D. and L. A. R. R. Co.*, 44 Cal., 106; *Pearson* v. *Concord R. R. Co.*, 28 Alb. Law Jour., 366.) So, if the position could be maintained that the Wesleyan Church was legally incorporated October 6, 1885, with Byam and White members of its board of trustees, and if it could be maintained that Byam and

White still remained legal trustees of the Court Street Church, the contract and the petitions for the consolidation of the two were not legally executed.

Though a legal contract and petitions for the consolidation of two existing legal religious corporations be duly executed and presented to the court, it may, in its discretion, give or withhold an order of consolidation. The statutes provide: "The Supreme Court may, in case it shall deem it proper, make an order for the union and consolidation of such corporations, determining all the terms, conditions and provisions thereof." (Sec. 5, chap. 209, Laws of 1875; § 3, chap. 176, Laws of 1876, and § 3, chap. 167, Laws of 1880.)

We see no occasion for doubting that the Special Term wisely exercised its discretion in withholding its confirmation of the attempted consolidation.

The order is affirmed, with costs.

MARTIN AND KENNEDY, JJ., concurred.

Order affirmed, with costs.