(68 App. Div. 327.)

### CARD v. MOORE et al.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

**1.** CONNECTICUT CORPORATION — ORGANIZATION — CERTIFICATE — FILING WITH SECRETARY OF STATE—RECORDING WITH TOWN CLERK.

Under Gen. St. Conn. § 1944, providing that "when" a certificate, setting forth compliance with certain statutory requirements, shall have been filed in the office of the secretary of state by promoters of a corporation, the association "shall become" a corporation, and section 1948, requiring a duplicate of such certificate to be recorded in the town clerk's office, recording in the clerk's office does not obviate the necessity of filing in the office of the secretary of state, but the latter formality is a condition precedent to corporate existence.

**2.** SAME—PARTNERSHIP AGREEMENT—RECITAL OF INCORPORATION—ESTOPPEL.

Where partners who had been carrying on business as a corporation entered into a written agreement reciting the existence of the supposed corporation merely for prudential reasons, and with no intention to create a corporation or belief that one had been created, the recital of incorporation did not estop one partner to deny corporate existence as against parties claiming under the other partner.

**3.** SAME—DE FACTO CORPORATION—INTENTION.

Where partners agreed to do business as a corporation, fulfilling a part of the statutory requirements of incorporation, but omitting certain essentials, with the intention of stopping short of the creation of a corporation, such action did not create a de facto corporation as between themselves.

**4.** SAME—PUBLIC POLICY.

In a suit by one of the partners for an accounting under their agreement, he cannot be denied relief on grounds of public policy, his claim not being based on the theory of the existence of a corporation, but being inconsistent therewith.

**5.** WRITTEN INSTRUMENT—FORGERY—ALTERATION—EVIDENCE.

Where the signature and execution of a written instrument on a certain date was contested, and six witnesses testified as to its execution, and that the signature was genuine, while experts testified that the signature was a forgery, and the date had been altered, a finding that the instrument was genuine was supported by the evidence.

**6.** EVIDENCE—DECEASED PARTY—DECLARATIONS AGAINST INTEREST.

Where partners agreed to do business as a corporation, but without incorporating, and such agreement contemplated the holding of a large majority of the pretended stock by one partner, his declarations that there was in fact a partnership were against interest, and hence admissible after his death, in an action by the surviving partner against alleged holders of pretended stock in the fictitious corporation.

Appeal from special term, Dutchess county.

Action by Albert M. Card against John A. Moore and others. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Richard F. Goldsborough (Harold G. Villard and George C. Warner, on the brief), for appellants.

Frederick C. McLaughlin, for respondent.

JENKS, J. The question in this case is the title to the property and profits of a business carried on from August 26, 1897, to March 5, 1901. Card, the plaintiff, and Morehouse made a written agreement on August 26, 1897. That agreement provided that Card, who was a lawyer licensed to practice in the state of Connecticut, together with Morehouse and Crandall, should form a corporation to be known as the Salisbury Carbonate Iron Company of Connecticut, with a capital stock of $30,000, "and the company to be formed to the extent of obtaining the name, the election of directors and officers of said corporation, said Morehouse to be the president and treasurer, and said Card to be the vice president and secretary, of said corporation"; that, after the said name was obtained as aforesaid, the business be carried on under said name, and Morehouse should own one-half and Card one-half thereof; that Crandall should be director, but should have no interest; that Morehouse and Card should carry on the business as a copartnership between them in the said name, and that they should divide equally the profits and share equally the losses. The plaintiff contributed $2,000 in cash and stock in the Hamilton Iron & Steel Company and his half interest in the Kelley Mining Company and the Chatham Furnace Company as his half share. Morehouse made an equal contribution, but Crandall did not contribute. On August 31, 1897, articles of association were drawn up by Card, and executed between ·Card, Morehouse, and Crandall, whereby the corporation was located in the town of Salisbury, county of Litchfield, and state of Connecticut, and the subscribers were stated to be J. J. Morehouse, of Salisbury, Conn., 280 shares; A. M. Card, of Sharon, Conn., 19 shares; and E. L. Crandall, of New York, 1 share. In September, 1897, these articles were filed with the town clerk of Salisbury, Conn., and published in a newspaper of Litchfield county. The business was carried on thereafter for 15 years, with Morehouse in possession, management, and control thereof. During that period, and on April 11, 1900, an agreement was made between the "Salisbury Carbonate Iron Company of Chapinville, Conn., a corporation duly organized and existing under the laws of the state of Connecticut," Morehouse, and Card, whereby Card abrogated and canceled his right and title and interest in a certain contract, and transferred his interest to Morehouse and the said company, and Morehouse and the said company in turn discharged Card, and whereby Card agreed to resign as secretary and director, and to cause Crandall to resign, and also agreed to perform any act or to sign any paper or to make any statement at the request of Morehouse which "would aid or facilitate in perfecting the corporate existence of the said company." The agreement contained other provisions of adjustment and settlement not material to this case. On June 28, 1900, Morehouse and Card executed a further written agreement, reciting that the parties had been in business together in different enterprises for 15 years,—

in the Kelley Mining Company, the Salisbury Iron Company, and other enterprises,—and reading that "whereas, both of the parties were and are now equal partners in the Salisbury Carbonate Iron Company, as heretofore under this agreement; and whereas, there has [sic] been various agreements made between said parties, and not carried out as they should have been,"—it was covenanted and agreed that Morehouse and Card have been and are, and shall continue to be, joint owners in the Salisbury Carbonate Iron Company, as heretofore, each owning the one-half thereof; that "the same shall continue and be run the same as at the present time, each to receive half the profits and to bear half the losses, and that all agreements theretofore made regarding the company should be merged in this agreement, which, with all obligations, should be binding on the heirs and assignees of the parties." Morehouse died on March 5, 1901. Upon his death the defendants Moore and Mallory took possession of the assets and property of the Salisbury Carbonate Iron Company, and refused to surrender it to Card, and have ever since been in possession. On April 2, 1901, the defendants Moore and Mallory, as a majority of the directors of the Salisbury Carbonate Iron Company, adopted the original articles of association of Morehouse, Card, and Crandall on August 31, 1897; certified that they were published in a newspaper of the county of Litchfield on September 9, 1897; and caused the same to be filed in the office of the secretary of state, as appeared by a certificate, on April 3, 1901. The existence of the corporation thus born in 1897 is not attacked in this suit. Indeed, the plaintiff pleads its existence, and alleges that he made it a party for the reason that the defendants Moore and Mallory claimed possession of the assets of the said partnership business, heretofore conducted under the corporate name of the Salisbury Carbonate Iron Company, as stockholders and directors. The line of demarkation between the business conducted under the corporate name and the corporation of the same name, which was perfected in 1901 upon the basis of the procedure taken in 1897, should be kept clear before us in order to understand the complications of this case.

Thus, chronologically, I have detailed such facts as are necessary in order to understand the objections raised by the appellants against the judgment of the special term. The plaintiff asserts title to the property and the profits of this business as the sole surviving partner of Morehouse, and seeks to enjoin the defendants from dominion over the property, to compel them to deliver it to him, to account, and to respond in damages. The defendants contend that the property is theirs as directors and officers of the Salisbury Carbonate Iron Company. The learned special term (Dickey, J., presiding) found that upon the agreement of June 28, 1900, Card and Morehouse entered into partnership in the business theretofore and since August 28, 1897, conducted under the name of the Salisbury Carbonate Iron Company; that Card was the sole surviving partner; that the statutes of Connecticut required, as a condition precedent, the filing of a certificate in the office of the secretary of state before the corporation could be formed; that this was not done prior to

March 6, 1901, and only after the death of Morehouse; that Card and Morehouse never intended to form a corporation; and gave judgment for the plaintiff.

The learned counsel for the appellants contends, first, that there was a corporation formed by Card, Morehouse, and Crandall. He says in his brief that "the only step omitted was the filing of one of two duplicate certificates. One was duly and timely filed in the office of the town clerk of Salisbury, Conn. The incorporators neglected to file the other one in the office of the secretary of state." This is hardly accurate; for it assumes that the duplicate to be filed in the office of the town clerk is of the same potency and effect as that filed in the office of the secretary of state. Extracts from statutes of Connecticut for the formation of corporations were read in evidence. The germane provisions are as follows:

Gen. St. Conn. § 1944:

"Any three or more persons who shall associate by written articles which shall express their agreement to constitute a corporation, the name by which it shall be known, the purpose for which it is constituted, the town in this state in which it is to be located, the amount of its capital stock, and the number of shares each person is to take, * * * under any name commencing with 'The' and ending with 'Company' or 'Corporation,' which name is not then in use by any existing corporation in this state, for the purpose of carrying on any lawful business in this state, and out of this state, * * * shall, when so associated, and when a certificate shall have been filed with the secretary of state as hereinafter provided, become and remain a joint stock corporation under this chapter: * * * provided, that in such case the secretary and treasurer and the majority of the directors shall always be residents of this state. * * *"

Section 1948:

"The directors shall cause the articles of association to be published at full length in a newspaper published in the county where the corporation is located; and a majority of the directors shall make, sign and swear to a certificate setting forth a true copy of the articles of association, which certificate shall state that such publication has been made, and also the name of the newspaper containing such publication, with the date thereof, and shall also state the names and residences of the subscribers thereto, the amount of the stock taken by each, the amount actually paid for in cash, and the amount paid for in property, specifying the same and giving the actual value thereof, and in case any portion of said property consist of letters patent or rights under the same, the number and date of the patents, and the nature of the invention shall be given; which certificate shall be deposited in the office of the secretary of state, who shall cause the same to be recorded, and a duplicate thereof shall be recorded in the town clerk's office of the town where the said corporation is located. No such certificate shall be received or recorded by the secretary of the state or by any town clerk which shall fail to state that twenty per cent. or more, as the case may be, of the stock has been paid for in cash, as required by this chapter. * * *"

Section 1090:

"A copy certified by the secretary of this state, under its seal, of the original certificate of organization of any joint stock corporation, shall be prima facie evidence of the due formation, existence and capacity of such corporation."

It is to be noted that the legislature had passed a general act, and that by proceeding under it Card, Morehouse, and Crandall were em-

powered to form a corporation. They must, therefore, have complied substantially with the material requirements of the act. New York Cable Co. v. City of New York, 104 N. Y. 1, 22, 10 N. E. 332. I think that a filing of the certificate with the secretary of state was a material requirement. Up to that time, the state, as the sovereign giver of the franchise, is, so to speak, in no sense a party, or has any relation or concern with the acts of the proposed incorporators. They might meet and agree upon the proposed incorporation, the terms thereof, and proceed to the perfection of their project, without the knowledge or the concern of the sovereign power. But that power has required that, after these steps directed by the statute have been taken, there shall be a certificate thereof deposited with its secretary of state in his office. This, then, is the first direct relation between the individuals and the state. The policy of the state is plain: It requires that a majority of the directors shall, under oath, certify, setting forth a true copy of the articles of association, that they have published their purpose to the world, stating the names and residences of the subscribers, the amount of stock taken by each, the amount actually paid for in cash, the amount paid for in property, specifying the same, and giving the actual value thereof, etc., and that they shall file their sworn certificate in the office of the secretary of state. I think that not only is this a material requirement, but a condition precedent. Indeed, the state, in effect, has said this, in that it provides in express terms that, "when the certificate shall be filed with the secretary of state, the association shall become and remain a joint stock corporation." If it were not material and precedent, then the abuses incident to sham and fraudulent corporations foisted upon the public to prey upon credulity, with immunity therefor, might well abound. I am sustained in this conclusion by the authorities. New York Cable Co. v. City of New York, supra; Burt v. Farrar, 24 Barb. 518; Mor. Priv. Corp. § 27; Childs v. Smith, 55 Barb. 45; Id., 46 N. Y. 34, though a reversal, is a reiteration of the point in question (page 41); De Witt v. Hastings, 69 N. Y. 518. In New York Cable Co. v. City of New York, supra, at page 23, 104 N. Y., and page 339, 10 N. E., the court, after detailing the various statutory steps required, say, per Rapallo, J.:

"Three of the directors are then to make affidavit in duplicate that the full amount of stock has been subscribed in good faith. * * * The certificate and articles are to be filed in the office of the secretary of state, and a duplicate in the office of the clerk of the county wherever the railway or railways shall be located, and thereupon the persons who shall become stockholders shall be a corporation. The observance of all these essential requirements is therefore a condition precedent to a company of this description becoming a corporation, or acquiring the right to exercise any of the powers conferred upon such corporations by the rapid transit act."

There are two answers to the contention of the learned counsel for the appellant: First. If the statute meant that the filing of a duplicate in the office of the town clerk should be of similar force and effect as the filing of the certificate in the office of the secretary of state, then I think that both requirements were material and conditions precedent. Thus, in the Cable Co. Case, supra, the provisions of the statute construed by Rapallo, J., required the affidavit of the

directors to be made in duplicate, and the certificates were to be filed in the office of the secretary of state and the county clerk's office, and the learned judge speaks of both as essential requirements and conditions precedent. But in the case at bar there is but one certificate required, and the provision "when" a certificate shall be filed with the secretary of state the association shall become a corporation. Second. I think that the provision requiring a duplicate to be filed in the office of the town clerk is but for convenience, to multiply proof and places of publicity. Raisbeck v. Oesterricher, 4 Abb. N. C. 444, 449, and authorities cited. It is also significant that the statute provides that a copy certified by the secretary of state, under its seal, of the original certificate, shall be prima facie evidence of the due formation, existence, and capacity of such corporation. But the learned counsel for the appellant contends that the precise question has been passed upon in his favor in Augur Steel Axle & Gearing Co. v. Whittier, 117 Mass. 451, where the plaintiff was organized under the laws of Connecticut on July 8, 1891, but did not file any certificate with the secretary of state until September 13, 1891. The suit was to recover the price of goods sold in the intervening period. The statute was the general law of Connecticut (title 7, c. 7, § 401), and the provision thereof under consideration, as stated by the court, was that a certificate of the president and directors must be deposited with the secretary of state before it shall commence business. The court held that such a certificate was not a condition precedent, in view of the decisions upon similar provisions in the statutes of Massachusetts; citing Merrick v. Engine Co., 101 Mass. 381, and Hawes v. Petroleum Co., Id. 385. The statute of Massachusetts, referred to in these cases as similar to that in Connecticut, provided: "Before such corporation commences business, the president, treasurer, and a majority of the directors shall sign * * * a certificate setting forth the corporate name," etc. There is a manifest distinction between a restriction upon a corporation doing business until a certain certificate is filed and a provision that there shall be no corporation until a certificate is filed. The Connecticut statute in review in this case retains the provision (at section 1947, Gen. St.) that no association of persons under the chapter, hereafter organized (not "corporation" even as in the Massachusetts statute), shall commence business until all its capital stock shall be subscribed, nor until the requirements of the succeeding section, i. e., that which requires the filing of a certificate with the secretary of state, be complied with, in addition to the provision which declares when it shall be a corporation, noted ut supra. In Raisbeck v. Oesterricher, 55 How. Prac. 516, cited supra as 4 Abb. N. C. 444, 449, cited by the learned counsel, the certificate was filed in the office of the county clerk under a provision that required its filing there, and the filing of a duplicate in the office of the secretary of state; that is, the office of the county clerk, in the purview of that statute, occupied the same relative position in the procedure of incorporation as that occupied by the office of the secretary of state under the Connecticut statute, while the office of the secretary of state of New York occupied the same relative position as that of the town clerk in the Connecticut statute. The case

would be an authority, then, if the question in this case turned upon the nonfiling of the certificate in the town clerk's office, but not otherwise. And such is the difference in Vanneman v. Young, 52 N. J. Law, 403, 20 Atl. 53, for the place of original record was the county clerk's office, and the certificate was recorded there. In Humphreys v. Mooney, 5 Colo. 282, the omission was to record a duplicate in the county where the original certificate was to be filed in the office of the secretary of state, and such, too, was the case in Mining Co. v. Woodbury, 14 Cal. 424, 73 Am. Dec. 658, and in Cross v. Mill Co., 17 Ill. 54. With reference to the authorities cited in Colorado, California, and Illinois, it will be found that the highest courts in those states have passed upon the principle adversely to the contention of the learned counsel for the appellant. See Stowe v. Flagg, 72 Ill. 397; Jones v. Hardware Co., 21 Colo. 263, 40 Pac. 457, 29 L. R. A. 143, 52 Am. St. Rep. 220; Martin v. Deetz, 102 Cal. 55, 63, 36 Pac. 368, 41 Am. St. Rep. 151.

The appellant further contends that the said agreement of April 11, 1900, wherein the Salisbury Carbonate Iron Company was named as a party, conclusively estops the plaintiff to deny the existence of the said corporation. It must be remembered that this is not an action brought against the Salisbury Carbonate Iron Company, born in 1901, but one brought to recover the business and proceeds of the business between plaintiff and Morehouse, in possession of the defendants. The precise question, then, is whether there was an estoppel on the plaintiff as to Morehouse. The learned court has found, and there is ample evidence to sustain it, that there never was intent to form a corporation on the part either of Morehouse or Card. The agreement of August 26, 1897, expressly declares their purpose, which was to carry on their copartnership under a corporate name. The agreement of April 11, 1900, in question, was between Card and Morehouse, who, upon the advice of counsel, also made the sham corporation which they had set up a party thereto. The contract did not pretend to affect or to deal with the interests of third parties. There is no estoppel in favor of Morehouse if he knew that the statement was false, for it cannot be contended that Card's act was calculated to mislead or did mislead Morehouse, acting in good faith. Trustees v. Smith, 118 N. Y. 634, 23 N. E. 1002, 7 L. R. A. 755; Hutchins v. Hebbard, 34 N. Y. 24; Maguire v. Selden, 103 N. Y. 642, 644, 8 N. E. 517; Railroad Co. v. Van Horn, 57 N. Y. 473. Vinegar Co. v. Schlegel, 143 N. Y. 537, 38 N. E. 729, cited by the learned counsel for the appellant, was an action brought by the corporation for an unpaid stock subscription. The plaintiff had executed written contracts with a copartner after his subscription, and there was also proof of user. And the court held that, as the defendant had dealt with the plaintiff as a corporation, he was estopped from denying it; citing Warehousing Co. v. Badger, 67 N. Y. 294; Bank v. Pfeiffer, 22 Hun, 327, affirmed 108 N. Y. 242, 253, 15 N. E. 311; Eaton v. Aspinwall, 19 N. Y. 119; Railroad Co. v. Cary, 26 N. Y. 75. Vinegar Co. v. Schlegel, supra, and the other cases cited supra (save one hereafter noted), turn upon the question of the liability of a stockholder, and therefore necessarily involved the rights of third

parties. In Eaton v. Aspinwall, supra, the court indicates the ground of its decision:

"The defendant was a shareholder of its capital stock, and that was apparent from the books of the corporation before the plaintiff gave it credit. This credit was given upon the faith not only of the liability of the corporation as such, but ultimately of the several shareholders of its capital."

Bank v. Pfeiffer, supra, concerned the dealings of third parties with the alleged corporation. The discrimination is plain between an estoppel where innocent third parties are concerned and an estoppel between parties dealing entirely among themselves and with their own interests. So far as the rights of the defendant are concerned, I shall discuss that question further on. Suffice it now to say that there was no estoppel as between Card and Morehouse. It certainly was not shown nor is it claimed that as to these defendants there was the slightest representation to them or dealing with them involved in the said agreement, or that they have suffered any loss or been prejudiced in any way thereby. Indeed, it appears that years afterwards, when they first availed themselves of circumstances, they proceeded to complete the corporate formation by filing a certificate with the secretary of state.

Nor can there be any question of a de facto corporation as between Card and Morehouse. Their omission to file a certificate was an overt act. User and a colorable creation may establish a corporation de facto. The basis of the principle is well stated by Bradley, J., in Lamming v. Galusha, 81 Hun, 247, 257, 30 N. Y. Supp. 767, affirmed 151 N. Y. 648, 45 N. E. 1132:

"As has already been observed, user as well as colorable creation is essential to a corporation de facto. Railroad Co. v. Cary, 26 N. Y. 75. And when it becomes such there is a relation between it and its officers, which will be recognized as effectual to enable them through such relation to justify the exercise of their functions in the control, management, and operation of the business of the corporation de facto which they represent. For that purpose it is, as to third persons, no less effectual than a corporation de jure."

But I think that Card and Morehouse, between themselves and as to themselves, could not create a corporation de facto. See Mor. Priv. Corp. § 778. In the leading case of Union Church v. Pickett, 19 N. Y. 482, Selden, J., speaking of the dealings of a third party with an alleged corporation, says:

"In such cases, if the record is perfect, then perhaps nothing else need be shown; but, if imperfect, it may still stand in place of, and be equivalent to, a very considerable evidence of user. The imperfection of the record cannot be taken advantage of by a private individual who has entered into engagements with the corporation. The rightfulness of its existence not being in issue, of course evidence of any irregularities or defects in its organization, short of such as would show a want of good faith on the part of those concerned in the proceedings, would be wholly irrelevant. If the law exists, and the record exhibits a bona fide attempt to organize, very slight evidence of user beyond this is all that can be required."

But in the case at bar, where the question is only between the parties, there is abundant evidence that there was an entire want of good faith, so far as the creation of a corporation was concerned. They deliberately set out, intending to stop short of forming a corporation. Unless, then, it be held that, as between the parties, those

who begin an incorporation cannot stop short in its formation, or, even though they deliberately refrain from forming the corporation, yet, by calling it a corporation between themselves, they create a corporation as between themselves, then I fail to see that there was a corporation de facto.

The learned counsel for the appellants also raises the question of public policy, and cites the case of Van Dyke v. Brown, 8 N. J. Eq. 657, 670. But the plaintiff is not asserting any right based upon the theory that there was a corporation formed. On the contrary, he is asserting that there was in truth a copartnership, and his contention that his rights are those of the sole surviving partner of Morehouse is inconsistent with any right founded upon the proposition that there was a corporation. In King v. Barnes, 109 N. Y. 267, 285, 16 N. E. 336, the court, per Ruger, C. J., says:

> "A sufficient consideration is afforded to it by the mutual promises of the respective parties to contribute equally to the capital required to carry out the contemplated enterprise, and their agreement to share equally in the profits and advantages expected to accrue therefrom. It is entirely immaterial whether this agreement constituted a partnership in a technical legal sense, or whether it was a joint enterprise, to be conducted by the parties for their mutual benefit. So far as their rights and liabilities are concerned in this case, the result is the same, and rests upon the express terms of the agreement, and they are now to be enforced upon the principles applying to partnership transactions. Dyckman v. Valiente, 42 N. Y. 551; Anderson's Case, 7 L. R. Ch. Div. 75."

And, even if we assume that the business had been transacted in violation of a special statute, that would not be a defense to an action by Card to recover the profits and proceeds of the business from these defendants. Wood v. Railway Co., 72 N. Y. 196, 28 Am. Rep. 125; Hoyt v. Allen, 2 Hill, 322. Van Dyke v. Brown, supra, cited by the learned counsel for the appellant, was reversed in 8 N. J. Eq. 795, 55 Am. Dec. 250. The decision below did not deal with the rights of A. and B., i. e., Card and Morehouse, but with those of C., a bona fide assignee of the rights of B. The higher court said that, if the claims of any of the parties depended upon giving their sanction to the proceedings in evasion of the statute, it would decline to do so.

The appellants attacked the agreement of June 28, 1900, as a forgery in respect to the signature of Morehouse and the date thereof. But the stress finally was laid upon the alleged change of the date. The testimony adduced by the appellants consisted of the opinion of certain experts that the signature was not that of Morehouse, of accounting for the presence of Morehouse elsewhere on the alleged day of execution, and the opinion of a famous expert that the typewritten agreement, both upon careful inspection and under the scrutiny of the microscope, showed that the date had been tampered with. The two witnesses to the agreement, one of them being the typewriter who prepared it, positively testified to its execution on that day. Four other witnesses gave very strong corroborative testimony as to its execution by Morehouse. The learned special term (Mr. Justice Dickey) justly says in his opinion that, if the evidence given by these witnesses be false, then six of them are perjur-

ers, and three of them are forgers. I see no good reason why we should disturb that finding that the agreement bears its true date. The testimony of an expert, however eminent, based upon the appearance of a paper of some age, when that appearance might be due to other causes than those inferred from visual examination and microscopic scrutiny, should not prevail with us against positive testimony of the witnesses in this case, credited by the special term, so as to require at our hands a reversal of its finding. We cannot say that the finding is against the weight of evidence, or that the proof so clearly preponderated in favor of a contrary result that it can be said that the trial court erred in its conclusions. Lowery v. Erskine, 113 N. Y. 52, 55, 20 N. E. 588. On the contrary, we think that the finding was entirely justified, and that the testimony in this case, especially in view of the last-named agreement, is sufficient to establish that the relationship between Card and Morehouse was that of a copartnership, which continued up to the time of the death of Morehouse.

We think that there is a failure of proof on the part of the defendant of any title to the business in question. The defendants alleged that they became bona fide stockholders of a defendant corporation upon the books, so far back as 1898, and that they acquired then, and have since retained, full legal and beneficial ownership of the shares of the stock then purchased by them, and they further alleged their right to possession is solely as directors. The defendant Moore testified that prior to the death of Morehouse he was secretary of the company. He produced a separate paper of minutes of a meeting alleged to have been held on September 8, 1898, annexed to the minute book, which, he said, Morehouse told him he could have written in that way as well as in the book itself, as they could not typewrite in the minute book. The learned court struck out the contents of the paper, save the record of an election of officers. Moore testified that Morehouse agreed that he was to have one share of stock in part payment for work. He did not contend that he was a stockholder until the time of that meeting, but testified that one share was issued to him while the meeting was in progress. He testified that there was no writing made, but merely this agreement that he was to have one share of the stock; and, referring to the negotiations preceding the agreement of April 11, 1900, he testified that there was said, in relation to the transfer of Card's share of the stock, that he was to have the 20 shares of that stock. It does not appear that the defendant ever paid anything for the stock, or that he ever received any stock, that he ever received any agreement for the stock, that there was in fact any stock, or that there was any corporation then in existence to issue stock, inasmuch as the minutes purport to have been made in 1898, while it is not pretended that the corporation was ever completed by the filing of the certificate with the secretary of state of Connecticut until 1901. So that the title comes down to this: That Mallory testified that before he attended the meeting of 1898, when Morehouse and Moore were present, he had received the transfer of a share of stock from Joseph J. Morehouse. He further testified: "I asked for a certificate. I didn't obtain one. I obtained

one afterwards. I have not the date when I got it. It was issued to me in March or April, 1901." Thus, the contention of Moore and Mallory is that they became stockholders in this alleged corporation, which had no existence, and which it was never contemplated by Card or Morehouse should exist, by the agreement of Morehouse in 1898 that each should have a share of stock therein, and that later it was agreed that Moore should have 20 shares of stock. Neither paid value; neither produced certificate or evidence from the books of the alleged corporation. There was no corporation; there was no stock. The record of this property is the typewritten minutes pasted in a minute book, which plaintiff says was in his possession until April 11, 1900; that up to such time no such minutes ever were placed therein.

The learned counsel for the appellant contends that the learned special term erred in the admission of evidence of the declaration of Morehouse, deceased. These declarations were made in the explanation of transactions between Card and himself. I think that evidence of these declarations was admissible as against interest. The theory of the defendants is that there was a corporation created by the acts of Card, Morehouse, and Crandall, in that there was a substantial compliance with the statutes of Connecticut, or that there was a corporation de facto. If that were true, then the records of the corporation show that Morehouse owned almost all of the stock. If the real agreement between Card and Morehouse constituted an equal copartnership between Card and Morehouse, then any evidence of the declarations of Morehouse to that effect would be against his interest, and I think would be admissible in this case. Lyon v. Ricker, 141 N. Y. 225, 36 N. E. 189; Greenl. Ev. § 147 et seq. But, if such evidence were incompetent, I think that its admission does not require a reversal of the judgment. Although the court of appeals in Foote v. Beecher, 78 N. Y. 155, refused to sanction the rule stated in McSorley v. Hughes, 58 Hun, 360, 12 N. Y. Supp. 179, on the ground that it could perceive no reason therefor, yet it was careful to say: "If the evidence is slight or irrelevant, or if without it the fact is conclusively established by other evidence, it may be disregarded, because it could not have injured the other party." See, too, Kelsey v. Cooley, 11 N. Y. Supp. 745, and authorities cited; Granger v. Brooks, 3 App. Div. 129, 132, 39 N. Y. Supp. 355. The learned special term found the fact of partnership entirely upon the said written agreement made by Card and Morehouse on June 28, 1900, and I think that this alone, when established, was sufficient to warrant his finding. So far as the question of intent is concerned, the various writings heretofore discussed afford sufficient evidence in themselves to justify the finding that Card and Morehouse never intended to form a corporation. The other points raised by the appellants do not present such merit as to require comment.

The judgment should be affirmed, with costs. All concur, except WOODWARD, J., taking no part.